Mathew K. Higbee Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6729 facsimile
mhigbee@higbeeassociates.com
rcarreon@higbeeassociates.com

Attorney for DENNIS FUGNETTI

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS FUGNETTI,<br><br>                              Plaintiff,<br> v.<br><br>BIRD B GONE, INC.; and DOES 1-10, inclusive,<br><br>                              Defendant. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**JURISDICTION AND VENUE**

1.     This is a civil action seeking damages and injunction relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 *et seq.*

2.     This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

3.     This court has personal jurisdiction over Defendant because Defendant is physically present and has a place of business in the state of California, Defendant's acts of infringement complained of herein occurred in the state of California, Defendant's acts of infringement were directed towards the state of California, and Defendants caused injury to Plaintiff within the state of California.

4.      Venue in this judicial district is proper under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

5.      Plaintiff Dennis Fugnetti ("Plaintiff" or "Fugnetti") is an individual residing in Orange County, California.

6.      Defendant Bird B Gone, Inc. ("Defendant" or "Bird B Gone") is a California corporation, with a place of business at 15375 Barranca Pkwy, Suite D, Irvine, CA 92618.

7.      Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and for that reason, sues such Defendants under such fictitious names. Plaintiff is informed and believes and on that basis alleges that such fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the conduct of said Defendants. Plaintiff will seek to amend the complaint when the names and capacities of such fictitiously named Defendants are ascertained. As alleged herein, "Defendant" shall mean all named Defendants and all fictitiously named Defendants.

## FACTUAL ALLEGATIONS

8.      Plaintiff Dennis Fugnetti has over 40 years experience as a professional photographer and graphic designer. For decades, Fugnetti has work with some of the top brands including ITT Cannon, Ferrari, De Tomaso, Lamborghini, American Racing, Honda, Hyundai, Toro, Armor All, American Hot Rods, Wheelsmith, Truespoke, Beckman, Eagle One, Curtis Speed, Bourns, and Toyota.

9.      Fugnetti is the owner and sole rights holder to a photograph of a pigeon landing ("Flying Pigeon Image"). Attached hereto as Exhibit A is a true and correct copy of the Pigeon Image.

10.   Fugnetti registered the Flying Pigeon Image with the United States Copyright Office and was issued certificate number Vau001349636, with an effective date of October 23, 2018.

11.   Defendant Bird B Gone is the self described "world's leading manufacturer of professional bird control products." *See* www.birdbgone.com.

12.   Defendant's flagship product is a set of stainless steel bird spikes, which can be placed on roofs, signage, and other surfaces as a deterrent to prevent birds from landing.

13.   Defendant also sells numerous other bird and pest deterrent products.

14.   In the mid-1990s Defendant engaged Fugnetti as an independent contractor to do graphic design work.

15.   Fugnetti was engaged by Defendant on a project-by-project basis.

16.   Fugnetti was primarily engaged to create display materials, spec sheets, and sales and education material typically used by Defendant at seminars and trade shows.

17.   As part of his design work, Fugnetti incorporated his Flying Pigeon Image into some of the materials created for Defendant by superimposing it with an image of Defendant's bird spikes to demonstrate Defendant's products. Attached hereto as Exhibit B is true and correct copy of exemplary types of materials Fugnetti created for Defendant.

18.   On or about 2002 or 2003, Defendant decided to take its graphic design in house, and Fugnetti and Defendant parted ways.

19.   At no time during the period of his engagement did Fugnetti give Defendant permission to use the Flying Pigeon Image outside the scope of the materials designed by Fugnetti for Defendant, nor was Fugnetti aware of any such use.

20.   When Fugnetti and Defendant parted ways, Fugnetti and Defendant had not executed a written or oral licensing agreement for the Flying Pigeon

Image, and Fugnetti never gave Defendant permission to continue to use the Flying Pigeon Image.

21.   On May 17th, 2017, Julie Donoho, a co-founder of Defendant, sent an email to Fugnetti requesting information about the Flying Pigeon Image.

22.   In the email, Donoho stated:

"We are in need of some dates. I known I am asking you to go back 20 years, but you had taken a picture of a bird that we have continued to use in numerous ad pieces for BBG."

23.   Attached hereto as Exhibit C is a true and correct copy of Donoho's email to Fugnetti.

24.   Prior to receiving the email from Donoho, Fugnetti had no idea that Defendant had continued to use his Flying Pigeon Image.

25.   On May 19th, 2017, Terri Anne Meyer, a marketing specialist for Defendant, emailed Fugnetti.

26.   In the email, Meyer stated:

"Unfortunately the photo was not copyrighted years ago. Everyone thought it was. I am attempting to copyright the photo now. Might you be willing to sign a release and we can just agree upon a date?"

27.   Attached hereto as Exhibit D is a true and correct copy of Donoho's email to Fugnetti.

28.   In response, Fugnetti stated that he would be willing to relicense the Flying Pigeon Image to Defendant for a fee.

29.   At Defendant's request, on or about June 9th, 2017, Fugnetti prepared an invoice for "[l]imited use of Flying Pigeon copyright for print and web" in the amount of $5,200, which he sent to Defendant.

30.   Attached hereto as Exhibit E is a true and correct copy of the invoice Fugnetti sent to Defendant for a limited use license for the Flying Pigeon Image.

31.   Fugnetti prepared the invoice with the understanding that Defendant would be using the Flying Pigeon Image in the same manner as it had been used when Defendant had engaged Fugnetti in the late 90s and early 00s; namely for

display materials, spec sheets, and sales and education material typically used at seminars and trade shows.

32.    At the time he prepared the invoice, Fugnetti did not intend to assign the rights to the Flying Pigeon Image or to grant Defendants anything other than a limited use license as described in the invoice.

33.    Defendant never accepted Fugnetti's offer for a limited use license for the Flying Pigeon Image and never paid the invoice.

34.    Approximately one year later, on August 27th, 2018, attorney Robert D. Fish sent en email to Fugnetti on behalf on Defendant.

35.    In the email Attorney Fish stated,

"I recently spoke with Terri-Anne [Meyer] over at BBG about the Flying Bird Image they've been using. My understanding is that you offered to give BBG exclusive rights to that image for $5,200.

Here's my thinking on that score. Copyright infringement has a three-year statute of limitations.
…

I'm not at all sure there are any new uses in the last three years, but I don't see why either of us should fight that battle. Bird-B-Gone would like to have full ownership of the copyrights of the image so that the can assert those rights against others. My recommendation is therefore that you assign those rights to BBG, in exchange for the $5,200.
…

Would you please execute the attached copyright assignment, and return it to me?

36.    Included, as an attachment to the email was a draft document completely assigning all rights to the Flying Pigeon Image to Defendant, with an effective date of July 31st, 2015.

37.    Attached hereto as Exhibit F is a true and correct copy of Fish's email to Fugnetti including the draft assignment document.

38.    After receiving the email and the assignment of rights, Fugnetti decided to investigate further to see if Defendant had in fact been using his Flying Pigeon Image.

39.  On or about September 20th 2018, Fugnetti discovered that Defendant was using the Flying Pigeon Image on packaging for it product "Stainless Steel Enviro Spike" sold through Home Depot for $29.97.

40.  Attached hereto as Exhibit G is a true and correct photograph of the packaging for Defendant's "Stainless Steel Enviro Spike" product currently being sold through Home Depot.

41.  On or about December 12th, 2018, Fugnetti's counsel, Attorney Ryan E. Carreon, sent correspondence to Attorney Fish on behalf of Fugnetti.

42.  In the letter, Attorney Carreon maintained that the Defendant's continued use of the Flying Pigeon Image on product packaging was unauthorized and requested that Defendant provide an accounting of all the uses of the Flying Pigeon Image so that the parties could resolve the matter.

43.  Attached hereto as Exhibit H is a true and correct copy of Attorney Carreon's letter to Attorney Fish.

44.  On or about January 2nd, 2018, Attorney Fish responded. His email stated in part:

> "Over a decade ago, Mr. Fugnetti orally provided Bird-B-Gone a non-exclusive license to use the 'Flying Pigeon Image' (the 'Work') on advertising and marketing materials related to Bird-B-Gone's business. Since that time, Bird-B-Gone has consistently used the Work in the same manner for the purpose of advertising and marketing Bird-B-Gone's bird deterrent products. Prior to granting the oral, non-exclusive license, and at least through the early 2000's, your client was well aware of Bird-B-Gone's business and the materials on which it intended to use the Work.
>
> Given these facts, the oral license negotiated between Mr. Fugnetti and Bird-B-Gone gives Bird-B-Gone the right to continue to use the Work in connection with the marketing and advertising of its bird deterrent products, in a manner consistent with our client's use of the Work over the last twenty years. Your client is well aware of the terms of the parties' arrangement. Alleging infringement at this point in time can only be done in bad faith, and any suit filed based on Bird-B-Gone's use of the Work to date would be baseless."

45.  Attached hereto as Exhibit I is a true and correct copy of Attorney Fish's email to Attorney Carreon.

46.  On January 18th, 2019, Attorney Carreon spoke with Attorney Fish on

1    the telephone regarding the correspondence that had previously been sent.

2        47.    Attorney Carreon reiterated that Fugnetti would like to have a full

3    accounting of where Defendant had used the Flying Pigeon Image prior to

4    executing any assignment paperwork.

5        48.    In response Attorney Fish stated that no accounting would be given,

6    and that he had previously stated his position in his prior email.

7        49.    When Attorney Carreon asked what message he could relay to his

8    client, Attorney Fish responded, "You can tell him to go pound sand."

9        50.    After the phone call with Attorney Fish, Fugnetti and his counsel

10   began to investigate further.

11       51.    Fugnetti discovered that the Flying Pigeon was being used to

12   advertise a wide array of products and services offered by Defendant.

13       52.    Attached hereto as Exhibit J are true and correct screenshots of some

14   of Defendant's continued infringing use of Fugnetti's Flying Pigeon Image on

15   various of Defendant's products.

16       53.    Additionally, unbeknownst to Fugnetti, in December 3rd, 2003,

17   Defendant had applied for, and been granted, a federal trademark for the Flying

18   Pigeon Image, registration number 3000872.

19       54.    Interestingly, the examination specimen provided by Defendant as

20   part of the trademark application included a photograph of the Flying Pigeon

21   Image being used in a trade show display designed by Fugnetti.

22       55.    Defendant's use of the Flying Pigeon Image as depicted in the

23   examination specimen was consistent with Fugnetti's understanding of how the

24   Flying Pigeon Image was to be used by Defendant.

25       56.    The examination specimen did not include any materials showing the

26   Flying Pigeon Image being used on Defendant's product packaging, ostensibly

27   because Defendant understood at the time it filed its trademark application that the

28   Flying Pigeon Image was not to be been used on product packaging.

COMPLAINT FOR DAMAGES            7

57.     Attached hereto as Exhibit K is a true and correct copy of Defendant's trademark application and examination specimen utilizing the Flying Pigeon Image.

58.     On information and belief, at the time of Defendant submitted its trademark application, it had not used the Flying Pigeon Image on any product packaging.

59.     On information and belief, during the term of Fugnetti's engagement with Defendant, Defendant did not use the Flying Pigeon Image on its product packaging because Defendant knew that it did not have permission to do so.

60.     On information and belief some of Defendant's infringing use of Fugnetti's Flying Pigeon Image occurred for the first time after October 23, 2018, including new and unique infringing uses in online and print advertising, and on product packaging.

61.     On information and belief, Defendant used photography editing software to extract the Flying Pigeon Image from materials prepared by Fugnetti so that it could use the Flying Pigeon Image in various manners outside the scope of the materials prepared and authorized by Fugnetti.

62.     Fugnetti did not give Defendant permission to use the Flying Pigeon Image outside the scope of the materials created by Fugnetti during his engagement with Defendant.

63.     Fugnetti did not give Defendant permission to use the Flying Pigeon Image on Defendants product packaging or to sell Defendant's products after Defendant and Fugnetti ceased doing business.

64.     Fugnetti did not give Defendant permission to register his Flying Pigeon Image as a trademark or to use the Flying Pigeon Image as a trademark for Defendant's goods or services.

/ / /

/ / /

1

2

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 101 *et seq.***

3      65.      Plaintiff incorporates by reference all of the above paragraphs of this

4   Complaint as though fully stated herein.

5      66.      Plaintiff did not consent to, authorize, permit, or allow in any manner

6   the said use of the Flying Pigeon Image.

7      67.      Plaintiff is informed and believes and thereon alleges that the

8   Defendant willfully infringed upon Plaintiff's copyrighted Flying Pigeon Image in

9   violation of Title 17 of the U.S. Code, in that it used, published, communicated,

10   benefited through, posted, publicized, and otherwise held out to the public for

11   commercial benefit, Plaintiff's original and unique Flying Pigeon Image without

12   Plaintiff's consent by using them on Defendant's product packaging and by

13   registering it as a trademark for Defendant's good and services.

14      68.      As a result of Defendant's violations of Title 17 of the U.S. Code,

15   Plaintiff is entitled to any actual damages and disgorgement of profits pursuant to

16   17 U.S.C. §504(b), or statutory damages in an amount up to $150,000.00 per

17   infringement pursuant to 17 U.S.C. § 504(c).

18      69.      As a result of the Defendant's violations of Title 17 of the U.S. Code,

19   the court in its discretion may allow the recovery of full costs as well as reasonable

20   attorney's fees and costs pursuant to 17 U.S.C § 505 from Defendant.

21      70.      Plaintiff is also entitled to injunctive relief to prevent or restrain

22   infringement of his copyright pursuant to 17 U.S.C. § 502.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

**PRAYER FOR RELIEF**

2

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

3

1.     For a finding that Defendant infringed Plaintiff's copyright interest in

4

the Flying Pigeon Image by engaging in the conduct alleged in this Complaint;

5

2.     For an award of actual damages and disgorgement of all of

6

Defendant's profits attributable to the infringement as provided by 17 U.S.C. § 504

7

in an amount to be proven or, in the alternative, at Plaintiff's election, an award for

8

statutory damages against Defendant in an amount up to $150,000.00 for each

9

infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

10

3.     For a seizure order directing the U.S. Marshal to seize and impound

11

all items possessed, owned or under the control of Defendant, their officers,

12

agents, servants, employees, representatives and attorneys, and all persons in active

13

concert or participation with them, which infringe upon Plaintiff's copyrights,

14

including but not limited to any and all broadcasting materials, advertising

15

materials, print media, signs, Internet web sites, domain names, computer hard

16

drives, servers or any other media, either now known or hereafter devised, bearing

17

any image which infringes, contributorily infringe, or vicariously infringes upon

18

Plaintiff's copyrights in the Flying Pigeon Image as well as all business records

19

related thereto, including, but not limited to, lists of advertisers, clients, customers,

20

viewers, distributors, invoices, catalogs, and the like;

21

4.     For an accounting be made for all profits, income, receipts or other

22

benefit derived by Defendant from the unlawful reproduction, copying, display,

23

promotion, distribution, or sale of products and services, or other media, either

24

now known or hereafter devised, that improperly or unlawfully infringes upon

25

Plaintiff's copyrights pursuant to 17 U.S.C. §§ 504 (a)(1) & (b);

26

27

5.     For an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from

28

any further infringing use of any of Plaintiff's Flying Pigeon Image;

6.     For costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

7.     For an award of pre- and post-judgment interest; and

8.     For any other relief the Court deems just and proper.

Dated: May 6, 2019                              Respectfully submitted,

                                                **/s/ Ryan E. Carreon**
                                                Ryan E. Carreon, Esq.
                                                Cal. Bar No. 311668
                                                **HIGBEE & ASSOCIATES**
                                                1504 Brookhollow Dr., Ste 112
                                                Santa Ana, CA 92705-5418
                                                (714) 617-8336
                                                (714) 597-6559 facsimile
                                                *Counsel for Plaintiff*

1

2

### DEMAND FOR JURY TRIAL

Plaintiff, Dennis Fugnetti hereby demands a jury trial in the above matter.

3

Dated: May 6, 2019                                    Respectfully submitted,

4

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.

5

Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**

6

1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418

7

(714) 617-8336
(714) 597-6559 facsimile

8

*Counsel for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "A"



# Exhibit "B"

# ALL BIRD•B•GONE PRODUCTS WILL NOT HARM BIRDS, AND ARE THE #1 BIRD CONTROL PRODUCTS SPECIFIED BY ARCHITECTS AND GOVERMENT AGENCIES !





## BIRD SPIKE 2000
- Prevent Birds from nesting/ roosting on ledges, roofpeaks, i-beams, sills, etc.
- Ideal for Pigeons, Seagulls, Starlings and most pest birds.
- Lowest Cost, available in a variety of colors to match any aesthetics.
- Clear Polycarbonate Spikes- YOU CAN'T SEE THEM !
- 5 Year Guarantee
- Non-Conductive

## BIRD WIRE 2000
- Low Cost, low profile solution to prevent large birds from landing.
- Ideal for ledges, sills, etc. where birds have been temporarily resting.
- 5 Year Guarantee

## BIRD NET 2000
- Most permanent, low visibility solution for all types of pest birds.
- Provides total exclusion.
- Industry Leading 10 Year guarantee- Rot Proof, Water Proof.
- Ideal for warehouses, eves, airline hangers, vents, awnings, etc.

## BIRD SPIKE 2001 STAINLESS STEEL SPIKE SYSTEM
- Virtually Invisible - 10 Year Guarantee
- Prevents Pigeons, seagulls and larger birds from landing where you don't want them to land.
- Available in 3",5" and 8" widths.
- The Ultimate in spike systems !

## ADIOS BIRD GEL
- Ideal for all bird types, including sparrows.
- Low cost solution - can't be seen by humans.
- Easy to install !
- BIRDS CAN'T STAND IT....YOU CAN'T SEE IT !



**Contact your BIRD•B•GONE Authorized Installer To Solve Your Pest Bird Problems !**



# BIRD SPIKE 2001™
## Stainless Steel
### only $2.95 per foot

## The Ultimate Spike for a new Millennium

### IMPORTANT INSTALLATION INFORMATION:



Side View



Underside View

1/4" Glue Trough/Holes For Easy Adhesive Attachment.

1/4" Screw Holes For Screw/Bolt Attachment.

Side View

Can bend up to 360°



For areas greater than 5" in width - multiple rows of Spike 2001 may be used to ensure complete coverage. Overlap Spikes 1" between rows.

13" Ledge/Area

Total Flexibility - Can bend 360 Degrees !





2 FEET!

only $2.95 per foot



LEDGE

Install Spike 2001 with at least 1/2" overhanging outer edge of ledge, roofline, or surface. Allow no more than 1/2" of space between back spikes and wall, window, etc.

## 10 Year Guarantee

Patent Pending



LEDGE

only $3.25 per foot

- Widest coverage of any metal spike available - 8" vs. 4" !
- Patent Pending Design for extra strength and stability.
- U.V. Protected Polycarbonate with Stainless Steel Spikes.
- Won't rust or deteriorate under extreme conditions.
- Guaranteed effective against Pigeons, Seagulls, Starlings and all other pest birds !
- Recommended by All Major Animal Rights Groups.
- Virtually invisible !

## BIRD•B•GONE

24362 Via Madrugada   Mission Viejo, CA. 92692
(949) 472-3122      Fax (949) 472-3116

Any Questions Regarding Spike 2001 Installation
Call 1-800-392-6815

# Exhibit "C"

**From:** "Julie Donoho" <​⬛⬛⬛⬛⬛>
**Date:** May 16, 2017 2:34:49 PM PDT
**To:** <dennis⬛⬛⬛⬛>
**Cc:** "Terri Anne Meyer'" <​⬛⬛⬛⬛⬛⬛>
**Subject:** Bird-B-Gone Request

Hello Dennis,

It has been a LONG time but I see you are still doing your wonderful photography. If you recall, you did some great photos for us back when BBG was just getting started. I hope all is going well for you.

We are in need of some dates. I know I am asking you to go back 20 years, but you had taken a picture of a bird that we have continued to use in numerous ad pieces for BBG.   We are in need of approximate dates that you took that picture. We know it is either 1999 or 2000 (maybe 2001 but doubtful). Do you keep photos in an archive that could help us with that, and the dates?

Terri Anne Meyer at BBG is in charge of this and she has called your cell and could not leave a message because your mailbox was full.    Her number is ⬛⬛⬛⬛

I would appreciate an email back or a call so we can get this information.

Regards,

Julie Donoho
Cell ⬛⬛⬛⬛

# Exhibit "D"

From: Terri Anne Meyer <​⬛⬛⬛⬛⬛​>
Subject: **RE: Bird  B Gone photos**
Date: May 19, 2017 11:28:33 AM PDT
To: Dennis Fugnetti <​⬛⬛⬛⬛​>
📎 7 Attachments, 20.8 KB   ( Save ▾ )   ( Slideshow )

Hi Dennis, I tried to call you back but your voicemail was full.  Thank you so much for reaching out.
Unfortunately the photo was not copyrighted years ago. Everyone thought it was. I am attempting to
copyright the photo now.  Might you be willing to sign a release and we can just agree upon a
date?
**THANK YOU!!!!!!!!!!!**
**Terri Anne Meyer  |  Marketing Specialist  |** ⬛⬛⬛⬛⬛⬛⬛⬛
(800) 392-6915 – Toll-free  |⬛⬛⬛⬛ – Direct Line
15375 Barranca Pkwy. Building D. Irvine, CA 92618
https://www.birdbgone.com





Watch this week's Two Minute Tuesday
for our pro bird control tip of the week!

# Exhibit "E"

**MIAD**
*Photo / Graphic*

# INVOICE

**DATE** 6/9/2017

**CLIENT:** BIRD.B.GONE

**ADDRESS:** 15375 Barranca Pkwy.-Building D
Irvine, Ca. 92618

**CLIENT PHONE NO:** ▮▮▮▮▮▮▮

**OUR JOB NO:** 21,971

**ORDERED BY:** Donoho/Meyer

**Job Description** Limited use of Flying Pigeon copyright for print and web

**CHARGES:** $5200.00

**Sub-Total** $5200.00

**Resale** w/number

**TOTAL** $5200.00

▮▮▮▮▮▮ AVE  Unit ▮▮▮  •  ▮▮▮▮▮ CALIFORNIA 92▮▮▮▮  •  TEL: ▮▮▮▮▮▮▮

# Exhibit "F"



From: Robert Fish <▮▮▮▮▮▮▮▮▮>
Subject: **Flying Bird image - Bird-B-Gone, our ref: 100745.0109**
Date: August 27, 2018 11:14:04 AM PDT
To: "dennis▮▮▮▮▮▮▮▮ <▮▮▮▮▮▮▮▮▮▮▮▮▮>
Cc: Terri Anne Meyer <▮▮▮▮▮▮▮▮▮▮▮>, Steven Castaneda <▮▮▮▮▮▮▮▮▮▮▮▮>, Sara Geer <▮▮▮▮▮▮▮▮▮>

📎 2 Attachments, 279 KB   ( Save ▾ )   ( Slideshow )

Hi Dennis,

I'm an attorney that works with Bird-B-Gone on IP matters.

I recently spoke with Terri-Anne over at BBG about the Flying Bird Image they've been using. My understanding is that you offered to give BBG exclusive rights to that image for $5,200.

Here's my thinking on that score. Copyright infringement has a three-year statute of limitations: "No civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. §507(b). On the other hand, each new use carries its own 3-year limitation.
*Petrella v. MGM* (Supreme Court 2014).

I'm not at all sure there are any new uses in the last three years, but I don't see why either of us should fight that battle. Bird-B-Gone would like to have full ownership of copyrights of the image so that they can assert those rights against others. My recommendation is therefore that you assign those rights to BBG, in exchange for the $5,200. I tried calling your (714)▮▮▮▮▮▮ number to discuss, but the voice mail was full.

Would you please execute the attached copyright assignment, and return to me? I will then cut you a check for the $5,200. Obviously, if you are not the owner of the copyright of the flying bird, then we would need to change the draft assignment so that the assignment is being executed by the owner.

Bob



**Robert D. Fish, Esq.**
Founding Partner I Fish IP Law LLP
2603 Main Street, Suite 1000 Irvine, CA 92614-4271
Direct: ▮▮▮▮▮▮▮ I Main: 949-943-8300 I Fax: 949-943-8358
I www.FishIPLaw.com I www.PatentBeast.com

Fish IP Law LLP, exclusive providers of fishiplaw.com™, Green Fields Patenting® and Blue Sky Patenting® patent portfolio development services.

Privileged and Confidential Communication. This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited.

## COPYRIGHT ASSIGNMENT AGREEMENT

This Agreement ("Agreement") is effective July 31, 2015, by and between Dennis Fugnetti dba Miad Photography, an individual having a principal office at ██████████████████ ██████████ (hereinafter "Assignor"), and Bird-B-Gone, Inc, a California corporation having a principal office at 15375 Barranca Pkwy, Suite. D, Irvine, CA 92618 (hereinafter "Assignee"). Assignor and Assignee are collectively referred to hereinafter as "The Parties".

### RECITALS

WHEREAS, Assignor claims to own all right, title, and interest in and to The Work, which is a photograph of a flying bird, a copy of which is shown immediately below:



WHEREAS, Assignee wishes to obtain all right, title, and interest in and to The Work, including without limitation the rights to record, copy, derivate, distribute, display, and perform the Work and any Derivative Works thereof, and all rights to sue for any previously unadjudicated rights against others for unauthorized use of The Work or Derivative Works thereof;

WHEREAS, Assignee has agreed to pay a lump sum payment for such assignment, and Assignor and Assignee have agreed upon such consideration and other terms, all of which are reflected in this Agreement;

NOW, THEREFORE, in consideration of the promises, conditions, covenants, warranties, and for other good and valuable consideration, including the consideration provided herein, the adequacy and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

### Grant Of Rights

1.   Assignor hereby grants to Assignee its successors and assigns, in perpetuity, all right, title, and interest, throughout the world, including any copyrights and renewals or extensions thereto, in and to The Work, including without limitation the rights to record, copy, derivate, distribute, display, and perform the Work and any Derivative Works thereof, and all rights to sue for any

previously unadjudicated rights against others for unauthorized use of The Work or Derivative Works thereof.

## No Duty To Produce, Market, Or Sell Any Product

2.    Nothing herein shall obligate or require Assignee to use or incorporate the Work or Derivative Works thereof into any Product(s), or to market or sell any Product(s).  Assignor acknowledges and agrees that use and performance of the Work and / or Derivative Works by the Assignee is at Assignee's sole discretion.

## Payments.

3.    Promptly upon satisfactory execution of this Agreement by Assignor, Assignee shall pay to Assignor a lump sum payment of US$5,200 (Five Thousand Two Hundred US Dollars).

## Warranty And Indemnification.

4.    Assignor warrants and represents that it has the full right, power and authority to enter into this Agreement and to grant the rights granted herein, and that it has not previously licensed or assigned any rights in a manner that would be antagonistic to, or inconsistent with, any of the grants set forth herein

5.    Assignor warrants and represents that that Assignor's performance of the Work / Derivative Works, and Assignee's exercise of the rights granted to it herein, will not violate any intellectual property rights of any third party.

6.    Assignor shall indemnify and hold harmless Assignee, its successors, assigns and Assignees, and the respective officers, directors, agents and employees, from and against any and all claims, damages, liabilities, costs and expenses (including reasonable attorneys' fee), arising out of or in any way connected with any breach of any representation or warranty made by Assignor herein.

## General Provisions

7.    Corporate Authority.  Each of the corporate Parties herein represents and warrants that:

    7.1.    It is a that is validly existing and in good standing under the laws of the jurisdiction in which it is organized;

    7.2.    It has full corporate power to execute, deliver and perform its obligations under this Agreement.

    7.3.    The person executing this Agreement on its behalf has its full authority to do so; and

    7.4.    It shall indemnify, defend and hold all other Parties herein harmless from and against any and all claims that may now or hereafter be made against any of them by virtue of any breach of the provisions of this paragraph.

8.   Merger.  This Agreement constitutes the entire and only agreement between the parties and supercedes all other prior negotiations, agreements, representations and understandings, oral and written between the Parties with respect to rights in and to the Work, and may be amended at any time only in a writing signed by both parties.

9.   Successors/Assigns. This Agreement is binding upon and shall inure to the benefit of the respective successors and/or assigns of the parties hereto.

10.   No Agency.  This Agreement shall not be construed to create a partnership, joint venture, agency or other legal relationship between the parties, or to from any other legal entity.

11.   Notice. The address of each party hereto as set forth herein shall be the appropriate address for the mailing of notices, checks and statements, if any, hereunder. All notices shall be sent certified or registered mail and shall not be deemed received or effective unless and until actually received. Either party may change their mailing address by written notice to the other.

12.   Dispute Resolution.  Resolution of all claims, disputes and other matters in question arising out of, or relating to, this Agreement, or the performance hereof, shall be had in an appropriate court in Orange County, CA, unless the Parties mutually agree to arbitration.  Each of the Parties agrees to jurisdiction in Orange County, CA.

13.   Headings.  The titles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

14.   Delay.  Time is of the essence in this Agreement.  However, the delay or failure of any party to exercise any of its rights under this Agreement for a breach thereof shall not be deemed to be a waiver of such rights, nor shall the same be deemed to be a waiver of any subsequent breach, either of the same provision or otherwise.

IN WITNESS WHEREOF, the parties have executed this Agreement on the dates indicated below.

Assignor: Dennis Fugnetti dba Miad Photography

Assignee: Bird-B-Gone

By:_____
   Dennis Fugnetti

By:_____
   Bruce Donoho, President

Date:_____

Date:_____



9/20/18   Home Depot

# Exhibit "H"

# Higbee & Associates

A NATIONAL LAW FIRM

December 12, 2018

**VIA E-MAIL:**
Robert D. Fish, Esq.
rfish@fishiplaw.com

RE:     **Dennis Fugnetti – Bird B Gone, Inc. Copyright Matter**

Mr. Fish,

My firm has been retained as litigation counsel for photographer Dennis Fugnetti. Mr. Fugnetti has forwarded me your correspondence to him in regards to the Bird-B-Gone matter, and has asked that I reach out to you.

As you may be aware, in the late 1990s, Bird-B-Gone licensed a series of images from Mr. Fugnetti for limited use materials such as leaflets and other educational print literature primarily distributed at trade shows. Attached as Exhibit A, are examples of the type of usage of Mr. Fugnetti's images that Bird-B-Gone engaged in. One of the images used by Bird-B-Gone for this type of use, was a picture of flying pigeon ("Flying Pigeon Image"), a copy of which is attached as Exhibit B. In approximately 2002 or 2003, Bird-B-Gone and Mr. Fugnetti parted ways. At that time, Mr. Fugnetti had not transferred ownership in the Flying Pigeon Image to Bird-B-Gone and did, and does, retain sole ownership of the copyright to that Image.

In May of 2017, representatives from Bird-B-Gone contacted Mr. Fugnetti stating that Bird-B-Gone was attempting to "copyright" the Flying Pigeon Image as they had continued to use it in various ways over the preceding 20 year period. Bird-B-Gone requested that Mr. Fugnetti provide them the date the Flying Pigeon Image was taken, and requested that Mr. Fugnetti sign a release, ostensibly so that Bird-B-Gone could complete the copyright registration paperwork.

In response, Mr. Fugnetti stated that he would be willing to allow Bird-B-Gone to use his Flying Pigeon Image going forward for an additional licensing fee. At Bird-B-Gone's request, Mr. Fugnetti prepared an invoice granting Bird-B-Gone a non-exclusive limited use license of the Flying Pigeon Images in for print and web. When Mr. Fugnetti calculated the price point contained in the invoice, it was under the assumption that the license would be non-exclusive, and that Bird-B-Gone would be using the Flying Pigeon Image in the same manner that it had been using it in the early 2000s, i.e. on leaflets or educational literature.

After a brief email exchange in May 2017, Mr. Fugnetti had no further contact with Bird-B-Gone until your office reached out to him in August of this year. Mr. Fugnetti was quite surprised when he received a document from you requesting that he completely assign all rights to the Flying Pigeon Image rather than simply license it to Bird-B-Gone.

# Higbee & Associates

A NATIONAL LAW FIRM

After being contacted by your office, Mr. Fugnetti visited the Bird-B-Gone website, and discovered that his Flying Pigeon Image was being prominently featured on a page selling Bird-B-Gone "Stainless Steel Pigeon Spikes" for $34.40. After doing additional research, Mr. Fugnetti discovered that his Flying Pigeon Image was also being used prominently on the packaging for Bird-B-Gone branded "Stainless Steel Enviro Spike" which are currently being sold through Home Depot. Attached hereto as Exhibit C are examples of Bird-B-Gone's current use of the Flying Pigeon Image on its product packaging.

Mr. Fugnetti maintains that Bird-B-Gone's current use of his Flying Pigeon Image on its product packaging violates his exclusive rights to that Image. At the same time, Mr. Fugnetti recognizes that there is likely a sensible business resolution including a retroactive license to compensate him for the past unauthorized use of the Flying Pigeon Image, as well as a future license to use the Image going forward, including potentially negotiating a complete assignment of the copyright. In order to facilitate a swift resolution of this matter, my client would request an accounting of all uses of the Flying Pigeon Image by Bird-B-Gone.

Please advise at your earliest convenience. I would also be more than happy to schedule a call to discuss this matter with you.

This letter is not intended, nor should it be construed, as a full recitation of all of the facts in this matter. Additionally, this letter is written without waiver or relinquishment of any rights or remedies, all of which are hereby expressly reserved.

Sincerely,

Ryan E. Carreon, Esq.

Cc:
Mathew K. Higbee, Esq.
Naomi M. Sarega, Esq.

# Exhibits Omitted

# Exhibit "G"

# Exhibit "I"

From: **Robert Fish** ⬛⬛⬛⬛⬛⬛ 📎
Subject: Dennis Fugnetti - Bird-B-Gone infringement matter // 100745.0109, (Bird-B-Gone, Inc.), Image Rights adv BBG
Date: January 2, 2019 at 4:40 PM
To: Ryan Carreon ⬛⬛⬛⬛⬛⬛
Cc: Naomi Sarega ⬛⬛⬛⬛⬛⬛   Mathew Higbee ⬛⬛⬛⬛⬛⬛

Dear Mr. Carreon,

This email responds to your correspondence of December 12, 2018.

Over a decade ago, Mr. Fugnetti orally provided Bird-B-Gone a non-exclusive license to use the "Flying Pigeon Image" (the "Work") on advertising and marketing materials related to Bird-B-Gone's business. Since that time, Bird-B-Gone has consistently used the Work in the same manner for the purpose of advertising and marketing Bird-B-Gone's bird deterrent products. Prior to granting the oral, non-exclusive license, and at least through the early 2000's, your client was well aware of Bird-B-Gone's business and the materials on which it intended to use the Work.

Given these facts, the oral license negotiated between Mr. Fugnetti and Bird-B-Gone gives Bird-B-Gone the right to continue to use the Work in connection with the marketing and advertising of its bird deterrent products, in a manner consistent with our client's use of the Work over the last twenty years. Your client is well aware of the terms of the parties' arrangement. Alleging infringement at this point in time can only be done in bad faith, and any suit filed based on Bird-B-Gone's use of the Work to date would be baseless.

Further, as your client has failed to register his copyright in the Work, the only damages he could possibly be entitled to, even if he prevailed on a claim of copyright infringement, would be his actual damages and injunctive relief. Your client has effectively already informed us that his alleged actual damages cannot be greater than $4,500, and of course he would not be able to obtain attorneys' fees or enhanced damages. By the time such a case got past the pleading stage, let alone dragged on for months or years, the attorneys fees alone would make no sense. Still further, my guess is that filing an infringement suit, in view of the oral license and our client's offer to purchase assignment of the copyright in the Work for $4,500, would be rather poorly received by an over-worked federal judge.

Nor is the threat of injunctive relief particularly problematic. In the event of litigation, Bird-B-Gone would simply choose a different mark, well before any judgment could be reached. And of course that would moot the issue, because without any ongoing usage, the issue of injunctive relief would be mooted.

In any case, even if your client chooses to pursue a claim of copyright infringement, his claim would be barred by both the Copyright Act's three-year statute of limitations and the doctrine of laches. *See AFL Telecommunications LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 942 (D. Ariz. 2013)("In considering whether a plaintiff's delay was unreasonable, courts consider: (1) the length of the delay, measured from the time the plaintiff knew or should have known about his potential cause of action, and (2) whether the plaintiff's delay was reasonable, including whether the plaintiff has proffered a legitimate excuse for his delay.")(quoting *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir.2006)). The fact is that as far back as the 1990's, your client was well aware of Bird-B-Gone's use of the Work when Bird-B-Gone began using the Work in connection with its business. Filing a claim of copyright infringement after decades of public use would constitute undue delay. Such a claim would be barred by the doctrine of laches, and could only be brought in bad faith.

Please let us know whether your client is amenable to a full assignment of rights in the Work to Bird-B-Gone for $5,400.  If not, Bird-B-Gone will begin adoption of an alternative mark.

Bob



**Robert D. Fish, Esq.**
Founding Partner | Fish IP Law LLP
2603 Main Street, Suite 1000 Irvine, CA 92614-4271
Direct: ███████████  Main: 949-943-8300 | Fax: 949-943-8358
███████████ | www.FishIPLaw.com | www.PatentBeast.com

Fish IP Law LLP, exclusive providers of fishiplaw.com™, Green Fields Patenting® and Blue Sky Patenting® patent portfolio development services.

Privileged and Confidential Communication. This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited.

**From:** Ryan Carreon [mailto:███████████████]
**Sent:** Wednesday, December 12, 2018 10:01 AM
**To:** Robert Fish
**Cc:** Naomi Sarega; Mathew Higbee
**Subject:** Dennis Fugnetti - Bird-B-Gone infringement matter

Mr. Fish,

Please see the attached correspondence sent on behalf of photographer Dennis Fugnetti.

Ryan E. Carreon
Associate Attorney
Copyright Division

Law Firm of Higbee & Associates  (http://www.higbeeassociates.com)
1504 Brookhollow Dr., Suite 112, Santa Ana, CA 92705
Direct: ███████████
Phone: (800) 716-1245                    Fax: (714) 597-6559

This electronic mail message and any attachment is confidential and may also contain privileged attorney-client information or work product. If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, you may not use, disseminate, distribute or copy this communication.  If you have received the message in error, please immediately notify us by reply electronic mail or by telephone and delete this original message.

# Exhibit "J"



## SOLAR BIRD CHASE SUPER SONIC

3 Reviews ★★⯪☆☆

### OVERVIEW

Bird B Gone Solar Bird Chase Super Sonic™ is an outdoor sound device powered by solar energy and is used to scare birds away.  Ideal for use in large open spaces where there is no access to a power source.

**SKU:** UR58

QUANTITY    1    **ADD TO CART**    TOTAL: ~~$275.00~~ **$225.00**

SHARE  G+  f  t  p          ♥ **ADD TO WISH LIST** ⌄





⟨   ●  ○  ○  ○   ⟩

| **DESCRIPTION** | **DATA SHEETS** | **REVIEWS** | **FAQS** |
|---|---|---|---|

| Bird Species | Pigeons, crows, seagulls, woodpeckers, starlings, grackles, sparrows, geese |
|---|---|
| Where to Use | Rooftops, warehouses, semi-enclosed areas, open fields, storage facilities, backyards, courtyards, loading docks, gardens, patios, parks, golf courses, pool areas and more |
| Bird Pressure | Light to Medium |
| Material | UV protected and weather resistant materials |
| Packaging | Includes one unit |
| Expertise Level | Easy |

Bird B Gone Solar Bird Chase Super Sonic™ is a programmable outdoor sound deterrent used to deter birds from large open spaces.  Birds hear on the same level of humans and do not hear ultrasonic noises. Solar Bird Chase Super Sonic™ features actual distress and predator calls of over 24 types of birds. These sounds are broadcast for two minutes in ten minute intervals to alert birds of danger. When birds hear these calls, their natural instinct is to flee the area. Solar Bird Chase Super Sonic™ is ideal for use in large open spaces where there is no access to a power source. Solar panels charge and store energy to keep the system operating during inclement weather. A built-in light sensor automatically powers down the deterrent when the sun goes down.  Solar Bird Chase Super Sonic™ includes a general setting to deter birds, and can also be specifically programmed to deter pigeons, crows, geese, seagulls, starlings, woodpeckers, grackles, geese and more! Unit offers coverage up to one acre.

**Solar Bird Chase Super Sonic Features and Benefits**

- Low-cost method of protecting your property
- Deters birds with bird distress and predator calls
- Ideal for large open spaces where there is no power source
- Features 24 pre-recorded distress/predator calls to scare birds away
- Programmable – you can choose your target bird
  - General bird setting covers multiple bird species
  - Unit can be programmed specifically for pigeons, geese, crows, starlings, seagulls, woodpeckers, and more!
- Rigid construction - UV protected - sun & weather resistant
- Solar panels charge and store energy to keep the system operating during cloudy weather
- Light sensor automatically shuts off the unit when the sun goes down
- Each unit offers coverage up to once acre







## Frequently Bought Together

Price for all three: **$41**$^{51}$

Add all three to cart

☑ **This item:** Enviro Spike 10 ft. x 5 in. Stainless Steel Bird Spikes **$29.97**

☑ HDX smooth rod caulk gun 10 oz **$3.57**

☑ Gorilla 9 oz. Construction Adhesive **$7.97**

## Sponsored Products



Commercial Pricing Available | 866-939-2823   SIGN IN   CART

SHOP   LEARN   ARCHITECTS   RETAILERS   PROFESSIONALS   CONTACT



## PLASTIC BIRD SPIKES
18 Reviews 

### OVERVIEW

Bird B Gone Plastic Bird Spikes keep birds from landing and roosting in unwanted areas on your property. Bird spikes are an effective, humane and cost-effective bird control solution that will not harm birds. Birds are unable to land on the bird spikes forcing them to leave the area. Bird B Gone Plastic Bird Spikes are ready to use, easy to install with no assembly or maintenance required. **See ledge chart in full product description for help selecting the appropriate spike width for your situation.** _**Not**_ _recommended in areas where birds have been nesting._



Spike Width    Choose an Option...
Color *        Choose an Option...
Box Size       Choose an Option...

* Required Fields

**SKU:** BBG2000



QUANTITY    1    ADD TO CART    TOTAL: **$23.00**

SHARE       ♥ ADD TO WISH LIST 

---

**DESCRIPTION**   INSTALLATION   ARCHITECT SPECS   DATA SHEETS   REVIEWS   FAQS

| | |
|---|---|
| Bird Species | Pigeons, seagulls, crows, vultures or larger birds. Not recommended in areas where birds have been nesting. |
| Bird Pressure | Light to Medium |
| Where to Use | Roof peaks, ledges, rooflines, beams, rooflines, parapet walls, eaves, I-beams, windowsills, light posts, signs, and more |
| Guarantee | 5-year from manufacturer's defects and defects caused by U.V. breakdown |
| Material | UV protected polycarbonate, one-piece construction |
| Packaging | 2-foot spike strip sections; patented one-piece design |
| Installation | Easy to install; can be glued, screwed, or tied down to most surfaces |

Virtually invisible, plastic bird Spikes are ideal for use on roof peaks, ledges, rooflines, parapet walls, eaves, I-beams, windowsills, light posts, signs, and more. The patented Bird B Gone Plastic Bird Spike design is made from a non-conductive U.V. protected polycarbonate plastic that is not affected by extreme temperatures and will not break! Our patented design does not require assembly and does not require strips to be assembled together to create the appropriate width.

### SIZING SUGGESTIONS

| Ledge Size | Suggested Spike Width |
|---|---|
| 1" - 5" width | 3" width |
| 5" - 7" width | 5" width |
| 6" - 9" width | 7" width |



  

\* Wider ledges may require multiple rows of bird spike strips. Install bird spike strips with 1 in overlap.

**PLASTIC BIRD SPIKE FEATURES AND BENEFITS**

- Humane, will not harm birds
- Easy to install
- Can be glued, screwed, or tied down to most surfaces
- No maintenance
- Virtually invisible
- Super strong and unbreakable
- Available in 3 in., 5 in., 7 in. widths for maximum coverage
- Patented design
- Will not cut or injure installer!
- Pre-assembled two-foot sections significantly reduces installation time
- Glue trough on base of bird spike sections allows for fast and easy application
- Non-conductive. Will not interfere with electrical or communication & transmissions
- U.V. protected and weatherproof. Not affected by extreme temperatures (+310°F to -200°F)!
- Notched strip design allows for smaller pieces to be broken away; no tools area necessary
- Ideal for use on ledges, roof peaks, I-beams, parapet walls, conduits, signs, flat or curved surfaces
- Manufactured by Bird B Gone, Inc.
- 5-year guarantee against manufacturer defects and defects caused by U.V. breakdown

## Videos                                                                          Hide Videos



 **Introduction to Plastic Bird Spikes**
Plastic bird spikes keep pest birds from landing and roosting....

 **Installing Bird Spikes**
How to install bird spikes on buildings of all types and surfa...

 **Pest Bird Control Bird Spikes**
Visit us at http://www.birdbgone.co Stainless Steel vs Plas...

 **Pinchos de Aves Claro Plasticos (Plastic Bird Spikes)**
¿Tiene preguntas sobre la instalación? www.birdbgone.com Llame...

 **Pinchos para Aves de instalación (Bird Spike Installation)**
Mantenga grandes aves plaga de aterrizaje. www.birdbgone.com

**Related Products**                                                              ‹  ›









| | | | |
|---|---|---|---|
| Stainless Steel Pigeon Spikes | Mega Bird Spikes | E6100 Adhesive Glue (10.2 Oz) | Sikaflex Adhesive Glue (10.1 oz tube) |
| From **$34.40** | **$263.50** | From **$9.50** | From **$9.50** |

## GET FREE ADVICE

**Our Bird Control Experts will help you choose the right product or find a professional bird control product installer in your area!**

 **Give us a call**
866-939-2823

 **Ask an Expert**
SEND US A MESSAGE

 **Request an Installer**
TELL US MORE

**NEWSLETTER**

Subscribe to receive our monthly newsletter & info about classes in your area!

 Subscribe today

By signing up, you will receive Bird B Gone, Inc. updates, offers, or other commercial messages. You are also agreeing to Bird B Gone, Inc's Privacy Policy.
You may unsubscribe at any time.

**SHOP**
Bird
Product
Industry

**GET TO KNOW US**
Our Story
We Give Back
BBG University
Reviews
Blog

**LET US HELP YOU**
Contact Us
Ask an Expert
Request an Installer
Request Catalog
Shipping & Returns Policy
FAQ

**CONTACT**
15375 Barranca Pkwy., Bldg. D
Irvine, CA 92618

Toll Free: 866-939-2823
Phone: 949-472-3122
Fax: 949-472-3116

© 2019 Bird B Gone, Inc.. All Rights Reserved.




Terms & Conditions  |  Terms of Use  |  Privacy Policy







# Exhibit "K"

PTO Form 1478 (Rev 6/2005)
OMB No. 0651-0009 (Exp xx/xx/xxxx)

# Trademark/Service Mark Application, Principal Register

**Serial Number: 78335711**
**Filing Date: 12/03/2003**

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **MARK SECTION** | |
| MARK FILE NAME | \\ticrs\EXPORT8\IMAGEOUT8 \783\357\78335711\xml1\APP0002.JPG |
| STANDARD CHARACTERS | NO |
| USPTO-GENERATED IMAGE | NO |
| COLOR MARK | NO |
| PIXEL COUNT ACCEPTABLE | YES |
| PIXEL COUNT | 774 x 944 |
| **OWNER SECTION** | |
| NAME | Bird-B-Gone, Inc. |
| STREET | 23918 Skyline |
| CITY | Mission Viejo |
| STATE | CA |
| ZIP/POSTAL CODE | 92692 |
| COUNTRY | USA |
| AUTHORIZED EMAIL COMMUNICATION | No |
| **LEGAL ENTITY SECTION** | |
| TYPE | CORPORATION |
| STATE/COUNTRY OF INCORPORATION | California |
| **GOODS AND/OR SERVICES SECTION** | |
| INTERNATIONAL CLASS | 006 |
| DESCRIPTION | Pest repellent devices, namely, electric and non-electrical metal architectural barriers for preventing birds from landing and perching. |
| FILING BASIS | Section 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 09/30/1998 |
| FIRST USE IN COMMERCE DATE | At least as early as 09/30/1998 |
| SPECIMEN FILE NAME(S) | \\ticrs\EXPORT8\IMAGEOUT8 \783\357\78335711\xml1\APP0003.JPG |
| SPECIMEN DESCRIPTION | Picture of tradeshow booth |
| **GOODS AND/OR SERVICES SECTION** | |

| INTERNATIONAL CLASS | 019 |
|---|---|
| DESCRIPTION | Pest repellent devices, namely, netting and non-metal architectural barriers for preventing birds from landing and perching. |
| FILING BASIS | Section 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 09/30/1998 |
| FIRST USE IN COMMERCE DATE | At least as early as 09/30/1998 |
| SPECIMEN FILE NAME(S) | \\ticrs\EXPORT8\IMAGEOUT8 \783\357\78335711\xml1\AP P0004.JPG |
| SPECIMEN DESCRIPTION | Picture of tradeshow booth |

## SIGNATURE SECTION

| SIGNATURE | /bruce donoho/ |
|---|---|
| SIGNATORY NAME | Bruce Donoho |
| SIGNATORY DATE | 12/03/2003 |
| SIGNATORY POSITION | President |

## PAYMENT SECTION

| NUMBER OF CLASSES | 2 |
|---|---|
| NUMBER OF CLASSES PAID | 2 |
| SUBTOTAL AMOUNT | 670 |
| TOTAL AMOUNT | 670 |

## ATTORNEY

| NAME | Susan Barricella |
|---|---|
| FIRM NAME | Rutan & Tucker, LLP |
| STREET | 611 Anton Blvd., Suite 1400 |
| CITY | Costa Mesa |
| STATE | CA |
| ZIP/POSTAL CODE | 92626 |
| COUNTRY | USA |
| PHONE | 714-641-5100 |
| FAX | 714-546-9035 |
| EMAIL | sbarricella@rutan.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| ATTORNEY DOCKET NUMBER | 100745.0019 |
| OTHER APPOINTED ATTORNEY(S) | Robert D. Fish; David Zoetewey; Mitch Milstein |

## CORRESPONDENCE SECTION

| NAME | Susan Barricella |
|---|---|
| FIRM NAME | Rutan & Tucker, LLP |
| STREET | 611 Anton Blvd., Suite 1400 |
| CITY | Costa Mesa |

| | |
|---|---|
| STATE | CA |
| ZIP/POSTAL CODE | 92626 |
| COUNTRY | USA |
| PHONE | 714-641-5100 |
| FAX | 714-546-9035 |
| EMAIL | sbarricella@rutan.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **FILING INFORMATION** | |
| SUBMIT DATE | Wed Dec 03 14:21:15 EST 2003 |
| TEAS STAMP | USPTO/BAS-XXXXXXXXXXX-200 31203142115032199-7833571 1-200bc8ed220f297c2244128 21a6e2ae5-DA-1111-2003112 5133535533810 |

PTO Form 1478 (Rev 6/2005)
OMB No. 0651-0009 (Exp xx/xx/xxxx)

## Trademark/Service Mark Application, Principal Register

**Serial Number: 78335711**
**Filing Date: 12/03/2003**

## To the Commissioner for Trademarks:

**MARK:** (Stylized and/or Design, see mark)

The applicant, Bird-B-Gone, Inc., a corporation of California, residing at 23918 Skyline, Mission Viejo, CA, USA, 92692, requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.

The applicant, or the applicant's related company or licensee, is using the mark in commerce, and lists below the dates of use by the applicant, or the applicant's related company, licensee, or predecessor in interest, of the mark on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended.

International Class 006: Pest repellent devices, namely, electric and non-electrical metal architectural barriers for preventing birds from landing and perching.
International Class 019: Pest repellent devices, namely, netting and non-metal architectural barriers for preventing birds from landing and perching.

In International Class 006, the mark was first used at least as early as 09/30/1998, and first used in commerce at least as early as 09/30/1998, and is now in use in such commerce. The applicant is submitting or will submit one specimen for *each class* showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) Picture of tradeshow booth.

Specimen - 1

In International Class 019, the mark was first used at least as early as 09/30/1998, and first used in commerce at least as early as 09/30/1998, and is now in use in such commerce. The applicant is submitting or will submit one specimen for *each class* showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) Picture of tradeshow booth.

Specimen - 1

The applicant hereby appoints Susan Barricella and Robert D. Fish; David Zoetewey; Mitch Milstein of Rutan & Tucker, LLP, 611 Anton Blvd., Suite 1400, Costa Mesa, CA, USA, 92626 to submit this application on behalf of the applicant. The attorney docket/reference number is 100745.0019.

The USPTO is authorized to communicate with the applicant or its representative at the following email address: sbarricella@rutan.com.

A fee payment in the amount of $670 will be submitted with the application, representing payment for 2 class(es).

### Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

Signature: /bruce donoho/  Date: 12/03/2003
Signatory's Name: Bruce Donoho

Signatory's Position: President


Mailing Address:
    Susan Barricella
    611 Anton Blvd., Suite 1400
    Costa Mesa, CA 92626

RAM Sale Number: 1111
RAM Accounting Date: 12/03/2003

Serial Number: 78335711
Internet Transmission Date: Wed Dec 03 14:21:15 EST 2003
TEAS Stamp: USPTO/BAS-XXXXXXXXXXX-200312031421150321
99-78335711-200bc8ed220f297c224412821a6e
2ae5-DA-1111-20031125133535533810



