Robert Fish (SBN 149711)
rfish@fishiplaw.com
John van Loben Sels (SBN 201354)
jvanlobensels@fishiplaw.com
Jennifer Shih (SBN 276225)
jshih@fishiplaw.com
FISH IP LAW, LLP
2603 Main Street, Suite 1000
Irvine, California 92614
Telephone:  (949) 943-8300
Facsimile:   (949) 943-8358

*Attorneys for Defendant, Bird-B-Gone, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dennis Fugnetti,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Bird-B-Gone, Inc.; and Does 1-10, inclusive,<br><br>　　　　　　Defendant.<br>―――――――――――――<br>Bird-B-Gone, Inc.; and Does 1-10, inclusive,<br><br>　　　　　　Counter-Claim Plaintiff,<br><br>　　v.<br><br>Dennis Fugnetti, an individual,<br><br>　　　　　　Counter-Claim Defendant. | **Case No. 8:19-cv-00847-AG (DFMx)**<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND ANTI-SLAPP AND MOTION TO DISMISS BIRD B GONE INC.'S FIRST AMENDED COUNTERCLAIM**<br><br>Hon. Andrew Guilford<br>Hearing Date: November 18, 2019<br>Hearing Time: 10:00 a.m.<br>Courtroom: 10-D<br>Complaint Filed:   May 6, 2019 |

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

# Table of Contents

1.  INTRODUCTION ....................................................................................... 1
2.  FACTUAL BACKGROUND ..................................................................... 2
    2.1. Fugnetti Transferred Some Of His Ownership Interests In The Flying Pigeon Image By An Oral Agreement With BBG ................................. 2
    2.2. Dissolution Of The Parties' Relationship ............................................ 5
3.  PROCEDURAL BACKGROUND .............................................................. 7
4.  ARGUMENT ............................................................................................... 7
    4.1. Legal Standard For Anti-SLAPP Motions .......................................... 7
    4.2. Prong Two Fails Because BBG Has Established A Probability of Prevailing On The Merits Its First Amended Counterclaim ................. 9
    4.3. Plaintiff Is Entitled To Attorneys' Fees Because The Motion To Strike Is Intended To Cause Unnecessary Delay .............................................. 11
    4.4. Fugnetti Is Not The Prevailing Party And Is Not Entitled To Attorneys' Fees ...................................................................................................... 12
    4.5. Fugnetti's Motion To Dismiss Under 12(b)(6) Must Be Denied ........ 13
5.  CONCLUSION .......................................................................................... 14

# Table of Authorities

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .................................................................................... 13

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................................... 13

Brill Media Co., LLC v. TCW Group, Inc.
　(2005) 132 Cal.App.4th 324 ......................................................................... 8

*Brown v. Electronic Arts*, Inc.,
　722 F. Supp. 2d 1148 (C.D. Cal. 2010) ...................................................... 12

*Decker v. U.D. Registry, Inc.*,
　105 Cal.App.4th 1382 (Cal.Ct.App.2003) .................................................. 12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
　751 F.3d 990 (9th Cir.2014) ........................................................................ 13

*J2F Prods., Inc. v. Sarrow*,
　No. CV 09-7000 CAS (CTX), 2010 WL 11519633
　(C.D. Cal. Jan. 11, 2010) ....................................................................... 10, 13

*Jensen v. Quality Loan Serv. Corp.*,
　702 F. Supp. 2d 1183 (E.D. Cal. 2010) ...................................................... 11

*L.A. Taxi Cooperative, Inc. v. Independent Taxi Owners Ass'n of Los Angeles*, 239
　Cal. App. 4th 918 (2015) ............................................................................ 12

*Mann v. Quality Old Time Serv., Inc.*,
　139 Cal. App. 4th 328 (2006) ....................................................................... 7

*Masimo Corp. v. Mindray DS USA, Inc.*,
　No. SACV 12-02206-CJC(JPRx), 2014 U.S. Dist. LEXIS 194571
　(C.D. Cal. Jan. 2, 2014) .............................................................................. 12

*Navarro v. Block*,
　250 F.3d 729 (9th Cir. 2001) ...................................................................... 13

Overstock.com, Inc. v. Gradient Analytics, Inc.
   151 Cal.App.4th 688 (2007) ................................................................................. 8
*PAE Gov. Services, Inc. v. MPRI, Inc.*,
   513 F.3d 856 (9th Cir. 2007) ...............................................................................11
Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n
   136 Cal. App. 4th 464 (2006). .............................................................................. 8
*Stutzman v. Armstrong*,
   2:13-CV-00116-MCE-KJN, 2013 U.S. Dist. LEXIS 129204,
   2013 WL 4853333 ...............................................................................................12
*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F. 3d 963 (9th Cir. 1999) ............................................................................... 8
*Valente-Krizer Video v. Pinckney*,
   881 F.2d 772 (9th Cir. 1989) ...............................................................................11
*Wong v. Tai Jing*
   189 Cal.App.4th 1354 (2010) ............................................................................... 8

**Statutes**
CAL. CIV. CODE §1550 ...............................................................................................10, 11

**Rules**
CAL. CIV. P. 425.16 *et.seq.* ................................................................................. 7, 8, 9,
FED. R. CIV. P. 8(a)(2) ..................................................................................... 8, 11, 13
FED. R. CIV. P. 12 ................................................................................................... 8
FED. R. CIV. P. 56..................................................................................................... 8

Defendant and Counterclaimant Bird-B-Gone, Inc. ("BBG" or "Defendant") submits its opposition to Plaintiff Dennis Fugnetti's ("Fugnetti" or "Plaintiff") second Motion to Strike, Dkt. 33 ("Motion").

## 1. INTRODUCTION

This is Plaintiff's second attempt to dismiss Defendant's first counterclaim under California's anti-SLAPP statute. The first time around, the Court granted Plaintiff's motion but gave Defendant leave to amend its counterclaim. The Court's sole basis for dismissing the firs counterclaim was its finding that the claim alleged a legally impermissible oral transfer of the copyright for Fugnetti's Flying Pigeon Image. In response to the Court's order, Defendant amended the first counterclaim and cured this defect. Defendant's amended counterclaim now expressly and repeatedly disclaims an oral agreement to transfer the subject copyright. Instead, the amended counterclaim alleges that Fugnetti and Defendant orally agreed to transfer all ownership interests in the Flying Pigeon Image *except the copyright*, including the unlimited right to use and reproduce the image. In this way, the first amended counterclaim is simply a permissible alternative legal theory to its second counterclaim for an oral non-exclusive license – a claim the Court sustained in the first anti-SLAPP and which Plaintiff does not challenge with its second motion.

Plaintiff's second anti-SLAPP motion fails because Plaintiff trotted out the same argument he made in his first motion but ignored the substantial amendments to the targeted counterclaim. That is, even though the amended counterclaim expressly disclaims an oral transfer of Fugnetti's copyright, Plaintiff simply ignores the new allegations and argues the counterclaim still amounts to an alleged oral agreement to transfer the copyright. There is no support in law or fact for Plaintiff's argument this time around. Moreover, BBG's evidence submitted with this opposition proves that Defendant is likely to prevail on the substance of the first amended counterclaim for breach of contract. As a result, Plaintiff's motion

must be denied in all respects.

## 2. FACTUAL BACKGROUND

From approximately 1996 until approximately 2004, BBG retained MIAD Photography ("MIAD") on a project-by-project basis for certain marketing projects. It was BBG's understanding that MIAD is owned at least in part by the plaintiff, Dennis Fugnetti, and it was Fugnetti with whom Defendant most often interacted on behalf of MIAD. Declaration of Bruce Donoho ("Donoho Decl.") at ¶4; Declaration of Stephanie Fitzpatrick ("Fitzpatrick Decl.") ¶4. During that time frame, Mr. Fugnetti was the primary point person at MIAD with whom BBG interacted. *Id.* BBG worked on at least ten (10) projects with Fugnetti/MIAD during the 1996 to 2004 time period. Donoho Decl. at ¶5; Fitzpatrick Decl. at ¶5. Both Mr. Donoho and Ms. Fitzpatrick were personally involved in those projects. *Id.*

There were numerous meetings among Fugnetti, Mr. Donoho, and Ms. Fitzpatrick, before the idea of the Flying Pigeon Image was even discussed. Donoho Decl. at ¶6; Fitzpatrick Decl. at ¶6. Fugnetti and BBG had various meetings about BBG's products and they worked together on a project by project basis to design marketing materials. *Id.*

### 2.1. Fugnetti Transferred Some Of His Ownership Interests In The Flying Pigeon Image By An Oral Agreement With BBG

On or about mid-1999, Ms. Fitzpatrick and Mr. Donoho met with Fugnetti at BBG's prior office located at 22511 Aspan Street, Lake Forest, CA. Donoho Decl. at ¶7; Fitzpatrick Decl. at ¶7. Ms. Fitzpatrick and Mr. Donoho told Fugnetti they needed an action picture of a pigeon flying so that we could illustrate in BBG's marketing materials the function of BBG's deterrent devices. *Id.* BBG expressly told Fugnetti that they wanted the image for use in marketing and packaging materials for BBG's bird deterrent products going forward. *Id.* Specifically, BBG told Fugnetti that they needed an image of a bird trying to land on something and

1  not being able to do so. *Id*. Mr. Donoho told Fugnetti that what he wanted was a
2  bird image that BBG could use going forward in whatever advertising and
3  marketing materials BBG chose to produce and use for BBG's bird deterrent
4  products. Donoho Decl. at ¶7.

5      Fugnetti agreed without reservation. Fugnetti said, "Fine. Ok." Donoho
6  Decl. at ¶8. Then he set a price of around $600.00 for the photographs and for
7  right to use the right to use those photographs going forward in BBG's marketing
8  materials as BBG saw fit. *Id.* It was this agreement that led to the creation by
9  Fugnetti and use by BBG of the Pigeon Image that is at issue in this case. *Id.* At
10 no time during our initial discussions, or at any time afterwards, did Fugnetti
11 attempt to limit or restrict BBG's right to use the Flying Pigeon Image. *Id.*

12     MIAD invoiced BBG around $600.00 for the photographs and the unlimited
13 right to use those photographs going forward just as BBG had agreed with
14 Fugnetti. Donoho Decl. at ¶9. If Fugnetti had attempted to limit BBG's ability to
15 use the Pigeon Image going forward, BBG would not have never done the deal
16 with MIAD at all. *Id*. After all, BBG would have had no business need for a
17 picture of a pigeon flying that it could not use in its business, and certainly would
18 not have paid $600.00 for such a photo. *Id*.

19     BBG then paid MIAD around $600.00 for the photographs taken from the
20 photography session and for the right to use selected bird images, including the
21 Flying Pigeon Image for BBG's marketing materials going forward. Donoho Decl.
22 at ¶10. Fugnetti never attempted to limit BBG's scope of use for any of the
23 photographs, including the Flying Pigeon Image. *Id*; Fitzpatrick Decl. at ¶10. In
24 fact, BBG commissioned MIAD for several projects after creation of the Flying
25 Pigeon Image which used the Pigeon Image, and BBG paid MIAD separately for
26 that work. Donoho Decl. at ¶11. That is, BBG commissioned MIAD to create
27 marketing materials that used the Flying Pigeon Image. BBG would never have
28 paid MIAD $600.00 simply for a print of the Flying Pigeon Image (as Fugnetti's

claim suggests). That is, if BBG had to pay MIAD again for every marketing product that used the Flying Pigeon Image, there would have been no business purpose to the transaction, because there is no conceivable value to BBG in the false arrangement that Fugnetti describes in his complaint.

MIAD Photography and Fugnetti did not have the Flying Pigeon Image or any other photographs of birds in its portfolio prior to this specific project from BBG; it was created for BBG's use. Donoho Decl. at ¶12. Around a week after Fugnetti completed his photography assignment, Ms. Fitzpatrick and Mr. Donoho met again with Fugnetti in BBG's office and selected one photograph out of the 50 photographs – the Flying Pigeon Image. Donoho Decl. at ¶13; Fitzpatrick Decl. ¶14. Fugnetti knew that BBG planned to use the photograph in BBG's current and future marketing materials, and Fugnetti never expressed any reservation about any of BBG's planned uses for the Pigeon Image. Donoho Decl. at ¶14.

Ms. Fitzpatrick and Mr. Donoho told Fugnetti that BBG would be using this photograph with all of BBG's bird deterrent advertisement materials going forward. Donoho Decl. at ¶15; Fitzpatrick Decl. ¶16. Specifically, BBG wanted to establish our product in the marketplace and wanted the ability to use the Flying Pigeon Image. *Id*. Fugnetti never gave any restrictions on the use of the Flying Pigeon Image nor did he give any restrictions on any of the other photographs. *Id*. Around a week following the meeting, Fugnetti cleaned up the Flying Pigeon image and the parties met again in BBG's offices to design the marketing material. *Id*. at ¶16. Fugnetti knew and consented to the fact that BBG would be using the Flying Pigeon Image in our marketing materials without restriction to use. *Id*.

Mr. Donoho and Ms. Fitzpatrick both made clear to Fugnetti in their conversations during the several meetings that BBG could use the selected bird image as they saw fit. *Id*. at ¶17. Fugnetti never mentioned to anyone at BBG that he would retain an ownership interest to the Flying Pigeon Image. Donoho Decl. at ¶18; Fitzpatrick Decl. at ¶18.

4

## 2.2. Dissolution Of The Parties' Relationship

In or about 2003 to 2004, BBG stopped using MIAD's services because MIAD Photography could not keep up with industry technology. Donoho Decl. at ¶19; Fitzpatrick Decl. at ¶19. When the parties parted ways, Fugnetti did not instruct BBG to not use the Flying Pigeon Image. Donoho Decl. at ¶20; Fitzpatrick Decl. at ¶20. Moreover, on at least three (3) occasions in or about 2004, Fugnetti personally visited the BBG offices and asked to bid on additional marketing work. Donoho Decl. at ¶21; Fitzpatrick Decl. at ¶21. In those meetings, Fugnetti saw – at a minimum – at least three (3) BBG applications of the Flying Pigeon Image which Fugnetti knew he and MIAD had no role in creating. Donoho Decl. at ¶22; Fitzpatrick Decl. at ¶22. For instance, BBG displayed multiple product posters with the Flying Pigeon Image on the walls of BBG's small office, and Fugnetti could not help but to have seen them. Donoho Decl. ¶23. Again, Fugnetti knew that MIAD was not involved in producing the subject posters.

Fugnetti told Ms. Fitzpatrick and Mr. Donoho during each of these office visits that MIAD could make marketing posters like the one in BBG's office and catalogs like the ones BBG showed him better and cheaper than the company that actually made the materials for BBG. Donoho Decl. at ¶24; Fitzpatrick Decl. at ¶24. Fugnetti asked to be able to bid on such work in the future. Donoho Decl. at ¶¶27-28; Fitzpatrick Decl. ¶28. Fugnetti never suggested that BBG had no right to use the Flying Pigeon Image or that the right was restricted in any way. In or about 2004 to 2005, Fugnetti saw at least two BBG catalogs that prominently displayed the Flying Pigeon Image. Donoho Decl. at ¶26; Fitzpatrick Decl. at ¶26. Again, Fugnetti and MIAD had nothing to do with creating the BBG catalog or any of the BBG product descriptions in that catalog. Donoho Decl. at ¶26. In fact Ms. Fitzpatrick personally handed Fugnetti a BBG catalog with the Flying Pigeon Image in 2004. Fitzpatrick Decl., Exhibit A. Fugnetti also had access to BBG's catalog from 2003 and also saw the posters displayed prominently in BBG's

offices. Fitzpatrick Decl, Exhibits B-D.

Again, Fugnetti asked for the opportunity to bid on future catalogs, and he did present bids to BBG. Donoho Decl. at ¶27; Fitzpatrick Decl. at ¶33.

At no time did Fugnetti say to Mr. Donoho or Ms. Fitzpatrick that BBG was using the Flying Pigeon Image improperly by including it in BBG's catalogs, or that BBG's use of the Flying Pigeon Image was in violation of the terms of our agreement. Donoho Decl. at ¶32; Fitzpatrick Decl. at ¶34. This is because Fugnetti knew that BBG had the right to use the image even in materials that MIAD did not produce.

In or about December of 2003, BBG filed for trademark application of the Flying Pigeon Image, registration number 3000872. *See* Exhibit C; Donoho Decl. Mr. Donoho sought to obtain protection for the Flying Pigeon Image because it is associated with BBG and he wanted to protect the Flying Pigeon Image with respect to bird deterrent products. Donoho Decl. ¶30. Fugnetti stopped coming by BBG's offices in or about 2005. Donoho Decl. at ¶31; Fitzpatrick Decl. ¶32.

Fugnetti never mentioned any restrictions to anyone at BBG regarding the use of the photographs. Donoho Decl. at ¶32; Fitzpatrick Decl. ¶34. From a business perspective, BBG would not have continued to market its bird deterrent products with the Flying Pigeon Image if BBG did not have the unrestricted right to do so. Donoho Decl. at ¶33.

In or about May of 2017, Mr. Donoho learned that certain of BBG's Chinese competitors had knocked off the Flying Pigeon Image for use with their competing goods. *Id*. at. ¶34. Mr. Donoho wanted to stop the Chinese competitors from their unlawful use of the Flying Pigeon Image. *Id*. at ¶35. Mr. Donoho contacted Fugnetti in order to ask him for assistance with the copyright registration for the Flying Pigeon Image. *Id.* BBG also sought counsel's assistance to enforce the Flying Pigeon Image rights against third party competitors. Rather than cooperate with BBG's request, Fugnetti went off to file a copyright registration for the Flying

Pigeon Image. *Id.* at. ¶36. Mr. Donoho was unaware Fugnetti went behind his back and filed for registration until he received service of Fugnetti's original complaint in this case in February of 2019. *Id.* at. ¶37.

Fugnetti did not submit a copyright application until October 23, 2018, nearly twenty (20) years after he had taken a photo of the Flying Pigeon Image. Dkt. 14 at ¶20.

### 3. PROCEDURAL BACKGROUND

On May 6, 2019, after the U.S. Copyright Office issued Fugnetti his copyright registration, Plaintiff proceeded to re-file his otherwise substantively identical complaint. Dkt. 1. On June 28, 2019, BBG filed its answer and counterclaims. Dkt. 14. Only July 19, 2019, Fugnetti filed an anti-SLAPP motion to strike and motion to dismiss BBG's counterclaims, Dkt. 18, as well as a motion to strike all of BBG's affirmative defenses, Dkt. 19. Following the hearing on September 16, 2019, the Court denied Plaintiff's anti-SLAPP motion as to the Second Counterclaim. Dkt. 31. The Court granted Plaintiff's Anti-SLAPP motion as to the First Counterclaim, but gave Defendant leave to amend its first, second, and third counterclaims as well as any stricken affirmative defenses. Dkt. 31, at 12. The Court also stated in its order that "[*w*]*hen appropriate*, Fugnetti may file the required documents with a motion for attorney fees and costs under California Code of Civil Procedure 425.1(c)(1). If Fugnetti chooses to file such a motion, he should *temper* his fee request according to the partial success he achieved on his anti-SLAPP motion." *Id.* at 7(emphasis added)(*citing Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 344 (2006)). On October 1, 2019, Plaintiff filed the first amended counterclaim for breach of contract which corrected the errors that led the Court to dismiss the original counterclaim. *See* Dkt. 32.

### 4. ARGUMENT

#### 4.1. Legal Standard For Anti-SLAPP Motions

Section 425.16 of the California Code of Civil Procedure applies in federal

7

courts in the absence of a "direct collision" between California's statutory scheme and Federal Rules of Civil Procedure 8, 12, and 56. *United States ex rel. Newsham v. Lockheed Missiles & Space C*o., 190 F. 3d 963, 972 (9th Cir. 1999). A special motion to strike under CAL. CIV. P. § 425.16 (the "anti-SLAPP" statute) involves lawsuits "brought primarily to chill the valid exercise of constitutional rights of freedom of speech and petition for the redress of grievances." CAL. CIV. P. § 425.16(a). Section 425.16 provides a two-pronged test. First, the moving party has the burden to establish a prima facie showing with admissible evidence that the cause of action arises from the defendant's exercise of free speech or petition rights as described in Code of Civil Procedure section 425.16. *Wong v. Tai Jing* 189 Cal. App. 4th 1354, 1366 (2010) ; CAL. CIV. P., § 425.17(c).

      In determining whether the moving party has met this initial burden, the Court considers the pleadings, declarations and matters that may be judicially noticed. *Brill Media Co., LLC v. TCW Group, Inc*. 132 Cal.App.4th 324, 329, 339 (2005). Once the moving party makes such a prima facie showing, the burden shifts to the non-moving party to establish a "probability" that plaintiff will prevail on the claims asserted against the defendant. CAL. CIV. P., § 425.16(b). The plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment." *Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n* 136 Cal. App. 4th 464, 476 (2006). Moreover, a plaintiff's burden is not high; courts accept as true all evidence favoring the plaintiff, and consider the defendant's evidence only to ascertain whether it defeats the plaintiff's claim as a matter of law. *Overstock.com, Inc. v. Gradient Analytics, Inc*. 151 Cal. App. 4th 688, 699–700 (2007).

### 4.2. Prong Two Fails Because BBG Has Established A Probability of Prevailing On The Merits Its First Amended Counterclaim

While BBG admits that its first amended counterclaim falls within the purview of the anti-SLAPP statute under prong one of the relevant analysis, Fugnetti cannot succeed on his anti-SLAPP motion because BBG has established a probability of prevailing on the first amended counterclaim. In determining the probability of success, the Court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." CAL. CIV. P. 425.16(b)(2).

Here, BBG demonstrates a probability of success on its breach of contract claim.

BBG sufficiently alleged a breach of contract and the cognizable harm related to this breach of oral contract. *See* Dkt. 32 at ¶¶38-47. Although a copyright may only be transferred by written agreement, all other ownership interests can be transferred by oral agreement. Dkt. 32 at ¶19. For example, as the Court found in resolving Fugnetti's first anti-SLAPP motion, BBG's allegations and evidence support finding Fugnetti's grant to BBG of a non-exclusive license for the unlimited use of the Flying Pigeon Image. Dkt. 31 at 5-6. Similarly, as BBG alleges in its first amended counterclaim, by oral agreement BBG purchased all rights and interests to the photographs it commissioned from Fugnetti, including rights to reproduce, modify and use those physical and digital copies in marketing and packaging as BBG saw fit, *except* – as the amended counterclaim now makes plain several times – the purchase did *not* include transfer of any of Fugnetti's copyrights, which transfer would have required a written agreement. *Id.* Dkt. 32 at ¶41("Through the purchase of the photographs, Fugnetti intended to and did transfer to BBG all ownership rights and interests in the Flying Pigeon Image except the copyright itself which cannot be transferred by oral agreement."). In the

9

DEFENDANT'S OPP TO MOTION TO STRIKE AND MOTION TO DISMISS

1  fact of these amended allegations, Fugnetti cannot credibly argue that the first
2  counterclaim alleges an oral transfer of the subject copyright.
3       As part of the transaction, BBG expressly communicated its intention to use
4  the images Fugnetti took and sold to BBG in the future, unspecified BBG
5  marketing materials. *Id*. at ¶39. BBG made consistent use of the Flying Pigeon
6  Image in its marketing, branding and advertising materials, and Fugnetti had actual
7  knowledge of these actions. *Id*. ¶22. As a direct result of Fugnetti's actions, BBG
8  has suffered monetary, competitive and irreparable harm. *Id.* at ¶29. Fugnetti's
9  breach of the oral contract was a substantial factor in causing BBG's harm. *Id*. at
10 ¶47. As a direct result of Fugnetti's actions in attempting to retroactively restrict
11 the terms of the non-exclusive license, BBG has suffered monetary, competitive
12 and irreparable harm. *Id*. Further, BBG submits with this opposition admissible
13 evidence of each essential element of BBG's first amended counterclaim.
14      Fugnetti argues that the alleged contract fails because it is prohibited by
15 Section 204(a) of the Copyright Act. Motion at 7. However, BBG's breach of
16 oral contract is not based on the transfer of ownership of a copyright. Courts in
17 this district have found this to be a valid breach of contract claim. *See J2F*
18 *Prods., Inc. v. Sarrow*, No. CV 09-7000 CAS (CTX), 2010 WL 11519633, at *3
19 (C.D. Cal. Jan. 11, 2010). The facts in *J2F Productions, Inc*. are similar to the
20 facts here because in J2F, counterclaimant's claim was "based on the fact that he
21 should own exclusive copyright to the film because he hired counterdefendants to
22 perform their work for him, they orally agreed that Sarrow would own the
23 copyright, and that counterdefendants breached his oral agreement by registering
24 the '193 copyright in J2F's name." *Id.* In *J2F Productions, Inc*. the Court found
25 Sarrow had sufficiently alleged a claim of breach of oral contract. *Id*. citing CAL.
26 CIV. CODE. 1550. The Court also found that "[i]t appears that *Valente-Kritzer*
27 *Video*, 881 F.2d 774, does not apply here, because Sarrow does not allege any
28 transfer of copyright ownership." *Id.* citing *Valente-Krizer Video v. Pinckney*,

10
DEFENDANT'S OPP TO MOTION TO STRIKE AND MOTION TO DISMISS

881 F.2d 772, 774 (9th Cir. 1989). Indeed, the Copyright Act does not apply to BBG's first amended counterclaim because BBG is alleging all ownership rights except title to the copyright.

Fugnetti also incorrectly claims that first amended counterclaim is duplicative of the second amended counterclaim. Motion at 10-11. The first and second amended counterclaims are not redundant of one another because the first counterclaim present alternative legal theories for addressing the same underlying facts. Pleading in the alternative is expressly permitted under the Federal Rules. *See* FED. R. CIV. P. 8(d)("A party may state as many separate claims or defenses as it has, regardless of consistency"); *see also PAE Gov. Services, Inc. v. MPRI, Inc.*, 513 F.3d 856, 859(9th Cir. 2007)(The Ninth Circuit allows pleadings in the alternative). As a result, Fugnetti's citation to *Jensen v. Quality Loan Serv. Corp,* is not applicable here. Motion at 10. In *Jensen,* the Court found the claims to be redundant because both claims incorporated the elements in California Civil Code section 1572. *Jensen v. Quality Loan Serv. Corp.,* 702 F. Supp. 2d 1183, 1194 (E.D. Cal. 2010). Here the first amended counterclaim claim is based on a breach of contract under California Civil Code §1550, while the second amended counterclaim seeks redress for breach of an oral non-exclusive license based on Section 204(a) of the Copyright Act. As a result the First and Second Amended Counterclaims are not impermissibly duplicative. Because Defendant has stated a valid claim for breach of contract, Fugnetti's motion to strike and motion to dismiss must be denied.

### 4.3. Plaintiff Is Entitled To Attorneys' Fees Because The Motion To Strike Is Intended To Cause Unnecessary Delay

Attorneys' fees and costs can be assessed against a section 425.16 movant if the "special motion to strike is frivolous or is solely intended to cause unnecessary delay." CAL CIV. P. §425.16 (c). This requires a finding that "any reasonable attorney would agree such motion is totally devoid of merit." *Decker v. U.D.*

*Registry, Inc.*, 105 Cal.App.4th 1382, 1392(Cal.Ct.App.2003).   The award of attorney's fees for a frivolous anti-SLAPP motion is mandatory.  *L.A. Taxi Cooperative, Inc. v. Independent Taxi Owners Ass'n of Los Angeles*, 239 Cal. App. 4th 918, 933(2015).  Here, plaintiff's second motion to strike is frivolous because Fugnetti brought a second anti-SLAPP motion against the same claim which he alleges serves as the basis for finding him partially-prevailing with the first motion. This is evidence that Fugnetti filed this second anti-SLAPP motion solely to cause unnecessary delay.

### 4.4. Fugnetti Is Not The Prevailing Party And Is Not Entitled To Attorneys' Fees

Fugnetti is not the prevailing party under the anti-SLAPP statute as applied in federal courts.  Motion at 11-2.  Under controlling federal authority, Fugnetti is simply not a partially-prevailing party.  *See Masimo Corp. v. Mindray DS USA, Inc.*, No. SACV 12-02206-CJC(JPRx), 2014 U.S. Dist. LEXIS 194571, at *6-7 (C.D. Cal. Jan. 2, 2014) ("Interpreting the Ninth Circuit's holding in Verizon and the California Court of Appeal's decision in Mann, district courts have denied defendants recovery of their attorney's fees and costs where the anti-SLAPP motion is granted, but the plaintiff is also given an opportunity to amend the complaint." ), *citing Brown v. Electronic Arts*, Inc., 722 F. Supp. 2d 1148, 1155-56 (C.D. Cal. 2010) (denying attorney's fees to the moving party under the anti-SLAPP statute where leave to amend was also granted) and *Stutzman v. Armstrong*, 2:13-CV-00116-MCE-KJN, 2013 U.S. Dist. LEXIS 129204, 2013 WL 4853333, at *21-22 ("[W]hen a plaintiff is granted leave to amend the complaint, a defendant whose anti-SLAPP motion is granted is not a 'prevailing party' for purposes of the anti-SLAPP statutory framework.").  While Fugnetti is currently asserting this second anti-SLAPP motion against Defendant's first amended counterclaim, the Court has not yet ruled on this motion.  As a result, there is no final order or judgment which provided Fugnetti with even a portion of the relief

he sought in his first anti-SLAPP motion. That makes Fugnetti's attorneys' fees motion at best premature.

### 4.5. Fugnetti's Motion To Dismiss Under 12(b)(6) Must Be Denied

Because Fugnetti also challenged the allegations of BBG's first amended counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the standard for that motion also applies to Fugnetti's arguments. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To satisfy the minimal pleading requirements, Plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

The applicable standard under *Twombly-Iqbal* requires the complaint to include enough "[f]actual allegations….to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In particular, the *Twombly-Iqbal* standard requires that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal*, at 678, quoting *Twombly* at 570. "Factual allegations must be enough to raise a right of relief above a speculative level." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir.2014), quoting *Twombly*.

As demonstrated above, Plaintiff's motion to dismiss as to the first amended counterclaim must be denied because BBG properly alleged a counterclaim of breach of contract. In cases such as this, Court have denied the motion to dismiss. *J2F Prods., Inc, supra,* 2010 WL 11519633, at *3 (C.D. Cal. Jan. 11, 2010)(Court denied motion to dismiss claim for breach of oral contract).

///
///
///

## 5. CONCLUSION

For the reasons set forth above, BBG respectfully requests that the Court deny Plaintiff's second anti-SLAPP motion and motion to dismiss in its entirety.

DATED: October 28, 2019

Respectfully submitted,
FISH IP LAW, LLP

/s/ *John van Loben Sels*
John van Loben Sels
Attorneys for Defendant,
BIRD-B-GONE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's CM/ECF system on October 28, 2019.

*/s/ John van Loben Sels*
John van Loben Sels, Esq.