John van Loben Sels (SBN 201354)
jvanlobensels@fishiplaw.com
Jennifer Shih (SBN 276225)
jshih@fishiplaw.comIs
FISH IP LAW, LLP
2603 Main Street, Suite 1000
Irvine, California 92614
Telephone:  (949) 943-8300
Facsimile:   (949) 943-8358

*Attorneys for Defendant*

Mathew K. Higbee, Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6559 facsimile
Email: mhigbee@higbeeassociates.com

*Attorney for Plaintiff,*
DENNIS FUGNETTI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS FUGNETTI,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>BIRD B GONE, INC.; and DOES 1-10, inclusive,<br><br>　　　　　　　Defendant | Case No.: 8:19-cv-00847-CJC (DFMx)<br><br>**JOINT STATUS REPORT** |

JOINT STATUS REPORT

Pursuant to the Court's June 12, 2020 Order Directing Parties to Submit a Joint Status Report concerning possible substitution of a party, ECF 56, the parties jointly submit the following status report.

**Plaintiff's Position**

Defendant's portion of this Joint Status Report makes a number of unfounded allegations concerning the circumstances preceding the parties' meet and confer efforts. Plaintiff's counsel will address these below, but will first address the items ordered by the Court to be contained in this Joint Status Report.

Although Dennis Fugnetti individually owned 100% all of the copyrights to his photographs, including the Flying Pigeon Image at issue, Mr. Fugnetti had, at various times, included his daughter Katie Fugnetti in the operation of his photography and design business. As such, since the inception of this case, Katie Fugnetti had assisted Dennis Fugnetti with various matters related to the litigation, has been part of the attorney-client relationship, and was authorized to make litigation decisions on behalf of Dennis Fugnetti.

Upon learning of Dennis Fugnetti's untimely passing, Plaintiff's counsel has continued to work with Katie Fugnetti on matters relating to the litigation including determining where Dennis Fugnetti's rights to the Flying Pigeon Image in what capacity the case would move forward with a new plaintiff.

On May 26, 2020 Defendant noted on the record the passing of Dennis Fugnetti triggering a 90-day window in which a new plaintiff is to be substituted[1].

---

[1] Federal Rules of Civil Procedure 25(a)(1) requires that a substitution be made no later than 90 days after either party files a suggestion of death on the record. *See Kasting v. Am. Family Mut. Ins. Co.,* 196 F.R.D. 595, 599 (D. Kan. 2000)("Rule 25 does not prohibit a party defendant from filing a suggestion of death ... the rule is silent as to who is permitted to file a suggestion of death. ... In practice, it is not unusual for a defendant to suggest death upon the record to impose upon the plaintiff's side the obligation to move for the substitution of a party, as a tactical maneuver of an adversary premised upon expediting the action or getting it

Plaintiff's counsel continued to litigate the case under the direction of Katie Fugnetti while determining what steps needed to be taken to substitute in a new plaintiff. On the afternoon of Friday, June 12, 2020 the Court issued a Minute Order (Dkt. #56) stating as follows:

> Defendant and counsel for Plaintiff are hereby DIRECTED to meet and confer and submit a joint status report to the Court addressing (1) their efforts to identify the proper party for substitution, if any, and (2) whether and when each party intends to file a motion for substitution.

Plaintiff's counsel's understanding of the purpose of the court ordered meet and confer was for the parties to preliminarily discuss Plaintiff's plan for a substitution. Plaintiff's counsel anticipated that additional dialogue would take place, including a substantive meet and confer pursuant to Local Rule 7-3 in advance of the filing of any motion to substitute.

On Monday, June 15, 2020, Plaintiff's counsel reached out to Defendant's counsel to set a meet and confer call. Approximately 30 minutes later, Defendant's counsel responded and demanded that Plaintiff's counsel produce:

- All evidence that serves as the basis for your belief that Mrs. Fugnetti [Dennis' wife] (or other third person) succeeded to the ownership of the lawsuit, specifically any will or trust document which might bear on this issue;
- All documents relating to Mr. Fugnetti's probate or other estate proceedings.

Plaintiff's counsel responded that he would "provide the appropriate documentation related to the substitution in due course." At the time of the response, Plaintiff's counsel had not spoken with his client and thus was not authorized to commit to disclosing the documents requested by Defendant's counsel, nor had a decision been reached by the client in terms of who or what would be substituted in as the new plaintiff.

Due to a preplanned vacation by Plaintiff's counsel, the parties agreed to

---

dismissed."). Defendant filed such a notice on May 26, 2020. Dkt. #54. Assuming such notice is procedurally valid, Plaintiff has until August 24, 2020 to file its motion for substitution.

2
JOINT STATUS REPORT

confer on June 24, 2020 at 10 a.m. On June 16, 2020, Plaintiff's counsel once again stated that the documents relevant to the substitution would be provided to Defendant's counsel in due course, although he stated that he did not anticipate that the specific documents requested would be produced in advance of the telephonic meet and confer.

After eight days of silence from Defendant's counsel, less than one hour before the meet and confer was set to take place, Defendant's counsel emailed Plaintiff's counsel accusing him of violating the spirit and letter of the Court's Minute Order and threatening to "bring the matter to the Court's attention."

In response, Plaintiff's counsel stated that he still planned on participating in the telephonic meet and confer and hoped and expected that Defendant's counsel would do the same. He also stated that he had hoped to explain in detail during the meet and confer call Plaintiff's plan for the substitution, which would involve forming a trust entity and transferring the rights to the Flying Pigeon Image with the trust being the new plaintiff. Plaintiff's counsel also stated that the documents regarding the rights transfer and trust instrument had not been finalized and therefore he was not able to produce the documents prior to the meet and confer call.

A full copy of the written correspondence between counsel is attached hereto as Exhibit A.

On the call with Defendant's counsel, Plaintiff's counsel stated that his client had determined that Dennis Fugnetti's wife, Alana, had inherited all rights to the Flying Pigeon Image and that Plaintiff's counsel was in the process of verifying that this was correct and determining the status of the estate so that the proper transfer paperwork and trust instrument could be created. Plaintiff's counsel also stated on the call that these documents had not yet been finalized but would likely be finalized in the next week or two and would be provided to Defendant's counsel once they were completed. Plaintiff's counsel also stated that at the time of his

original June 16 email he had not spoken to his client and thus could not to commit to disclosing the documents requested. He also relayed his client's concern that documents related to Dennis Fugnetti's estate were private and sensitive and therefore the client was reluctant to disclose them at this time. He also stated that he would ensure that sufficient documentation related to ownership of the Flying Pigeon Image would be presented so that Defendant could make a determination of whether to oppose the substitution.

Additionally, the parties discussed Defendant's counsel's concern that a trust entity would be improper to substitute in given the Counterclaim that had been asserted by Defendant. Plaintiff's counsel stated that nothing would have prevented Mr. Fugnetti in life from forming a corporation, LLC, or trust and transferring in the rights if he had wanted to do so, and that the proper plaintiff would necessarily be who or whatever owned the legal rights to the Flying Pigeon Image since the claim for infringement and Counterclaim for breach of implied license were tied to the underlying ownership of the rights at issue.

It is inaccurate for Defendant to claim that Plaintiff's counsel "refused" to provide the transfer and trust documents. Plaintiff's counsel stated multiple times, including in his June 24 email, that such document had not yet been finalized and that he would produce them once they were. Plaintiff's counsel's client is still in the process of determining the formalities of the trust, including whether additional photography assets might be transferred into the trust in addition to the Flying Pigeon Image, prior to finalizing the trust instrument and transfer paperwork.

Furthermore, as Plaintiff's counsel stated numerous times in writing and on the meet and confer call, appropriate documents related to the substitution, including documents related to the trust and transfer of rights, will be provided to Defendant's counsel once the documents are completed. Additionally, Plaintiff's counsel anticipates meeting and conferring with Defendant's counsel pursuant to Local Rule 7-3 in advance of any motion to substitute. Plaintiff's counsel

4
JOINT STATUS REPORT

anticipates that it will not initiate the meet and confer until all documents related to the substitution are finalized, and also anticipates that the full slate of documents will be provided at that time so that Defendant can determine whether it will oppose the motion.

At this time, Plaintiff's counsel anticipates that the motion to substitute will be filed in the next three weeks or so after the trust instrument and transfer paperwork are finalized. Plaintiff's counsel also anticipates providing all relevant documents on which the motion to substitute will be based to Defendant's counsel prior to the Local Rule 7-3 meet and confer.

**Defendant's Position**

This status report is the first time that Plaintiff's counsel has identified Mr. Fugnetti's daughter, Katie Fugnetti, as being "authorized" to make litigation decisions on behalf of Mr. Fugnetti. Plaintiff's counsel made no mention of this fact during the parties' meet and confer call or in his written correspondence. On June 9, 2020, Plaintiff's counsel without explanation produced a verification page for Plaintiff's interrogatory responses signed on February 5, 2020. In fact, the only person Plaintiff's counsel mentioned on the parties call was Mrs. Fugnetti, who counsel claimed "inherited everything."

On June 17, 2020, prior to the parties' meet and confer call on June 24, 2020, Defendant's counsel requested the production of certain documents from Plaintiff's counsel so that Defendant's counsel could prepare for the conference and evaluate any planned substitution. Specifically, Defendant's counsel sought the following documents:

- All evidence that serves as the basis for [counsel's] belief that Mrs. Fugnetti (or other third person) succeeded to the ownership of the lawsuit, specifically any will or trust document which might bear on this issue; and
- All documents relating to Mr. Fugnetti's probate or other estate proceedings.

5
JOINT STATUS REPORT

*See* Exhibit B.

Notwithstanding multiple written requests, Plaintiff's counsel refused to produce documents or other evidence related to his plan to substitute a third party in place of Mr. Fugnetti. Plaintiff's counsel responded that such documents would be produced in "due course." On the day of the meet and confer, Plaintiff's counsel responded to Defendant's reiterated request for documents by stating that he was "in the process of forming a trust which will be substituted in as the new plaintiff."

During the meet and confer call, Plaintiff's counsel described what happened legally following Mr. Fugnetti's death as "the wife inherited everything." When asked how it was that Mrs. Fugentti inherited everything, Plaintiff's counsel stated that it happened "because Mr. Fugentti died". However, Plaintiff's counsel refused to provide a copy of Mr. Fugnetti's will, trust, or other document which would prove Mrs. Fugnetti's inheritance, and he refused to state whether a will had been probated, though Plaintiff's counsel acknowledged that such documents exist. Plaintiff's counsel did not know whether or when Mr. Fugnetti's will was probated. During the meet and confer call, Plaintiff's counsel never mentioned Mr. Fugnetti's daughter Katie Fugnetti at all.

Next, Plaintiff's counsel described his plan to substitute out Mr. Fugnetti as plaintiff by creating a trust to hold Mr. Fugnetti's affirmative rights in the case. However, Plaintiff's counsel was unable or unwilling to share the new trust documents with Defendant's counsel. Plaintiff's counsel was also unable or unwilling to inform Defendant whether this new trust would hold other assets. The net result of counsel's plan is to bring a motion (at some point in the next two weeks) seeking to substitute a newly created asset-free trust as the new plaintiff and counterclaim defendant.

This approach is problematic for a number of reasons, not the least of which being that Defendant's counsel has not seen the trust or any evidence

6
JOINT STATUS REPORT

concerning how the trust gained control of Mr. Fugnetti's claim in the lawsuit. Moreover, it is not clear on what basis Plaintiff's counsel would replace a real person with assets for an otherwise empty trust that will have no means to satisfy an adverse judgment if Defendant prevails. Plaintiff's counsel took the position during the meet and confer discussion that such a transfer is one that Mr. Fugnetti could have accomplished himself in life had he chosen to do so. Respectfully, he could not have absolved himself of potential counterclaim liability in such a way after the lawsuit was filed had Mr. Fugnetti himself attempted to do so, and Plaintiff's counsel should not be permitted to do so now.

As a result of the foregoing, the purpose of the meet and confer process was frustrated by Plaintiff's counsel's refusal to provide even the most basic documents to evaluate his planned substitution. Moreover, Defendant is now unable to identify or agree upon the proper party for substitution, if any. Thus, as of today, Defendant does not intend to bring a motion to substitute a party for Mr. Fugnetti, but may do so if it receives evidence that Mrs. Fugnetti succeeded to all of Mr. Fugnetti's rights and responsibilities in this case.

Dated: June 26, 2020        FISH IP LAW, LLP

*/s/ John van Loben Sels*
John van Loben Sels
Attorneys for Defendant, BIRD-B-GONE, INC.

DATED: June 26, 20        HIGBEE & ASSOCIATES

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705
(714) 617-8336

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's CM/ECF system on June 26, 2020.

**Respectfully submitted,**

**FISH IP LAW, LLP**

Dated: June 26, 2020

*/s/ John van Loben Sels*
John van Loben Sels
Attorneys for Defendant, BIRD-B-GONE, INC