1  Robert Fish (SBN 149711)
   rfish@fishiplaw.com
2  John van Loben Sels (SBN 201354)
   jvanlobensels@fishiplaw.com
3  FISH IP LAW, LLP
   2603 Main Street, Suite 1000
4  Irvine, California 92614
   Telephone:  (949) 943-8300
5  Facsimile:   (949) 943-8358

6  *Attorneys for Defendant, Bird-B-Gone, Inc.*

7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  DENNIS FUGNETTI
    PHOTOGRAPHY TRUST          Case 8:19-cv-00847-CJC-DFM

12                 Plaintiff,   **STATEMENT OF
                                UNCONTROVERTED FACTS AND
13  v.                          CONCLUSIONS OF LAW IN
                                SUPPORT OF DEFENDANT BIRD-B-
14  BIRD B GONE, INC.; and DOES 1  GONE, INC.'S NOTICE OF MOTION
    through 10 inclusive,       AND MOTION FOR SUMMARY
15                              JUDGMENT
                   Defendants.
16

17                              Judge:       Hon. Cormac J. Carney
                                Courtroom:            9-B Floor
18                              Hearing Date:     October 4, 2021
                                Hearing Time:         1:30 P.M
19

20

21

22

23

24

25

26

27

28

Pursuant to the Local Rules of the United States District Court for the Central District of California, Rule 56-1, Defendant Bird-B-Gone, Inc. ("BBG") submits the following Statement of Uncontroverted facts and Conclusions of Law in Support of Defendant's Motion for Summary Judgement.

## STATEMENT OF UNCTROVERTED FACTS AND GENUINE ISSUES

### ISSUE 1

### IMPLIED NON-EXCLUSIVE LICENSE

Plaintiff's claim of copyright infringement are barred, in whole or in part, by license or the doctrine of implied license because Plaintiff impliedly and explicitly, directly and indirectly, provided a nonexclusive license of the Flying Pigeon Image to BBG and there are no issues of material fact.

| Uncontroverted Material Fact | Supporting Evidence Citation |
|---|---|
| | |
| 1. Bruce Donoho is the President and founder of BBG, established in 1992. | van Loben Sels Dec. ¶3 |
| 2. BBG is the world's largest manufacturer of professional grade bird deterrents. | van Loben Sels Dec. ¶3 |
| 3. In the year 1999, BBG hired MIAD to provide an image of a bird that would be used to demonstrate its bird deterrent products. | van Loben Sels Dec. ¶8, 46:24– 47:9<br>van Loben Sels Dec. ¶3<br>van Loben Sels Dec. ¶9, 26:8-23<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15, 32:1-3<br>van Loben Sels Dec. ¶4 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | van Loben Sels Dec. ¶28, para 6 |
|---|---|---|
| 4. | Bruce Donoho provided a drawing of a bird to illustrate the necessary positioning of its wings and body. | van Loben Sels Dec. ¶8, 132:8-11<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15 |
| 5. | MIAD presented photographs for BBG to review | van Loben Sels Dec. ¶8, 66:2-10<br>van Loben Sels Dec. ¶9, 45:25-46:15<br>van Loben Sels Dec. ¶9, 47:4-19<br>van Loben Sels Dec. ¶28<br>van Loben Sels Dec. ¶19 |
| 6. | BBG representative Bruce Donoho chose the pigeon image. | van Loben Sels Dec. ¶11, 75:7-18 |
| 7. | JMB used software to digitally process the pigeon image. | van Loben Sels Dec. ¶11, 75:7-18 |
| 8. | On October 6, 1999, MIAD issued an invoice to BBG in the amount of $93.63, which BBG paid in full, for a collection of images of pigeon and geese. | van Loben Sels Dec. ¶16 |
| 9. | On December 1, 1999, MIAD issued an invoice to BBG in the amount of $754.25, which BBG paid in full, for photography & film charges pigeons. | van Loben Sels Dec. ¶18 |
| 10. | On December 1, 1999, MIAD issued an invoice to BBG in the amount of $1,185.25, which | van Loben Sels Dec. ¶17 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | BBG paid in full, for travel time and film related to the collection of images of pigeon and geese. | |
| 11. | MIAD issued the December 1, 1999 invoice for $1,185.25 twice. | van Loben Sels Dec. ¶9, 57:7-58: 9 |
| 12. | The October 6, 1999 Invoice and the December 1, 1999 Invoices were payments for the Image. | van Loben Sels Dec. ¶9, 59:6-11 |
| 13. | The purpose of the image was for nonexclusive use in future BBG advertising and marketing for its products without limitation in scope. | van Loben Sels Dec. ¶28<br>van Loben Sels Dec. ¶9, 26:8-23<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15, 32:1-3<br>van Loben Sels Dec. ¶9, 53:9-25<br>van Loben Sels Dec. ¶8, 66:10-13<br>van Loben Sels Dec. ¶3<br>van Loben Sels Dec. ¶11, 115:23-116:17 |
| 14. | BBG informed Fugnetti that the image would be used on future packaging and marketing materials. | van Loben Sels Dec. ¶8, 71:6-12<br>van Loben Sels Dec. ¶3<br>van Loben Sels Dec. ¶9, 26:8-23<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15<br>van Loben Sels Dec. ¶9, 42:16-24<br>van Loben Sels Dec. ¶4, ¶¶7, 8,.40, 41 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 15. | Fugnetti was told that the image was to be used by BBG for any purpose | van Loben Sels Dec. ¶9, 37:23-24<br>van Loben Sels Dec. ¶9, 42:4-24<br>van Loben Sels Dec. ¶3<br>van Loben Sels Dec. ¶4, ¶¶ 8, 13, 16 |
|---|---|---|
| 16. | Fugnetti confirmed his understanding that BBG would use the image without restriction. | van Loben Sels Dec. ¶9, 48:17-49:14<br>van Loben Sels Dec. ¶9, 82:4-25<br>van Loben Sels Dec. ¶4<br>van Loben Sels Dec. ¶3 |
| 17. | It was in the ordinary course of business for MIAD to provide images without restrictions, especially to commercial clients. | van Loben Sels Dec. ¶11, 36:22-25<br>van Loben Sels Dec. ¶11, 118:16-119:16<br>van Loben Sels Dec. ¶11, 172:2-15<br>van Loben Sels Dec. ¶11, 177:2-11 |
| 18. | BBG was considered one of MIAD's commercial clients. | van Loben Sels Dec. ¶11, 118:16-119:16 |
| 19. | MIAD understood that if commercial clients like BBG were restricted by MIAD from using the Images, they would not hire MIAD. | van Loben Sels Dec. ¶11, 118:16-119:16 |
| 20. | MIAD had a copyright notice. | van Loben Sels Dec. ¶15 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 21. | MIAD used its copyright notice on car posters it produced but knowingly did not put the notice on works produced for its commercial clients, including BBG. | van Loben Sels Dec. ¶11, 118:16-119:16 |
|---|---|---|
| 22. | None of the examples incorporating the Image contain MIAD's copyright notice. | van Loben Sels Dec. ¶19 Fugnetti00225-00961 |
| 23. | MIAD allowed its commercial clients to use images in various ways to generate revenue. | van Loben Sels Dec. ¶11, 118:16-119:16 |
| 24. | If BBG did not have exclusive use of the image, it would not have hired MIAD. | van Loben Sels Dec. ¶8, 71:25-72:1-6 van Loben Sels Dec. ¶9, 48:17-49: 14 |
| 25. | BBG wanted to use the Image in marketing materials including catalogs, posters, packaging. | van Loben Sels Dec. ¶9, 49:19-25 van Loben Sels Dec. ¶9, 53:9-25 |
| 26. | MIAD produced flyers, brochures, posters. | van Loben Sels Dec. ¶11, 73: 3-22 |
| 27. | Dennis Fugnetti did not produce any flyers, brochures or posters for MIAD. | van Loben Sels Dec. ¶11, 73:3-22 van Loben Sels Dec. ¶11, 74: 4-12 |
| 28. | It was in the ordinary course of MIAD's business not to issue written agreements. | van Loben Sels Dec. ¶11, 37:1-3 van Loben Sels Dec. ¶11, 110:23-111:1 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 29. | It was in the ordinary course of MIAD's business to provide services to its commercial clients on a project by project basis. | van Loben Sels Dec. ¶11, 30:15-17 |
|---|---|---|
| 30. | BBG engaged MIAD on a project-by-project basis to provide photographs used in various projects. | van Loben Sels Dec. ¶28<br>van Loben Sels Dec. ¶3<br>van Loben Sels Dec. ¶8, 33:1-20<br>van Loben Sels Dec. ¶9, 23:12-23<br>van Loben Sels Dec. ¶9, 42:4-24<br>van Loben Sels Dec. ¶9, 53:9-25 |
| 31. | BBG discontinued using MIAD's services in 2003. | van Loben Sels Dec. ¶8, 99:22-100:5<br>van Loben Sels Dec. ¶9, 67:11-68:4 |
| 32. | Fugnetti visited BBG offices at least three times in 2004 | van Loben Sels Dec. ¶8, 102:4-25<br>van Loben Sels Dec. ¶9, 82:4-25<br>van Loben Sels Dec. ¶9, 69:1-70:16 |
| 33. | At the time of Fugnetti's visit, the Image was used on marketing materials displayed in the BBG offices | van Loben Sels Dec. ¶9, 82: 4-25<br>van Loben Sels Dec. ¶4<br>van Loben Sels Dec. ¶23 |
| 34. | Upon his request, Fugnetti was provided a physical copy of a catalog using the Image. | van Loben Sels Dec. ¶9, 82:4-25<br>van Loben Sels Dec. ¶4<br>van Loben Sels Dec. ¶24 |
| 35. | Fugnetti made a bid on the catalog project. | van Loben Sels Dec. ¶9, 82:11-19<br>van Loben Sels Dec. ¶4 |
| 36. | Fugnetti knew BBG continued to use the Image. | van Loben Sels Dec. ¶11, 106, 3-16<br>van Loben Sels Dec. ¶11, 103:19-25 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | | van Loben Sels Dec. ¶4 |
| | | van Loben Sels Dec. ¶9, 82:4-25 |
| 37. | BBG had used the Image less frequently and by December 2018, decided to cease using it altogether. | van Loben Sels Dec. ¶10, 72:4-23 |

## ISSUE 2

## **LACHES**

Plaintiff's claims for equitable relief are barred by the doctrine of laches due to Plaintiff's extreme delay in bringing this action, and the severe prejudice suffered by BBG as a result.

| **Uncontroverted Material Fact** | **Supporting Evidence Citation** |
|---|---|
| 38. In the year 1999, BBG hired MIAD to provide an image of a bird that would be used to demonstrate its bird deterrent products. | van Loben Sels Dec. ¶8, 46:24 – 47: 9<br>van Loben Sels Dec. ¶3<br>van Loben Sels Dec. ¶9, 26:8-23<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15, 32:1-3<br>van Loben Sels Dec. ¶4<br>van Loben Sels Dec. ¶28 |
| 39. Bruce Donoho provided a drawing of a bird to illustrate the | van Loben Sels Dec. ¶8, 132:8-11<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | necessary positioning of its wings and body. | |
| 40. | MIAD presented photographs for BBG to review | van Loben Sels Dec. ¶8, 66:2-10<br>van Loben Sels Dec. ¶9, 45:25-46:15<br>van Loben Sels Dec. ¶9, 47:4-19<br>van Loben Sels Dec. ¶28<br>van Loben Sels Dec. ¶19 |
| 41. | BBG representative Bruce Donoho chose the pigeon image. | van Loben Sels Dec. ¶11, 75:7-18 |
| 42. | JMB used software to digitally process the pigeon image. | van Loben Sels Dec. ¶11, 75:7-18 |
| 43. | On October 6, 1999, MIAD issued an invoice to BBG in the amount of $93.63, which BBG paid in full, for a collection of images of pigeon and geese. | van Loben Sels Dec. ¶16 |
| 44. | On December 1, 1999, MIAD issued an invoice to BBG in the amount of $754.25, which BBG paid in full, for photography & film charges pigeons. | van Loben Sels Dec. ¶18 |
| 45. | On December 1, 1999, MIAD issued an invoice to BBG in the amount of $1,185.25, which BBG paid in full, for travel time and film related to the collection of images of pigeon and geese. | van Loben Sels Dec. ¶17 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 46. | MIAD issued the December 1, 1999 invoice for $1,185.25 twice. | van Loben Sels Dec. ¶9, 57:25-58:1-9 |
|---|---|---|
| 47. | The October 6, 1999 Invoice and the December 1, 1999 Invoices were payments for the Image. | van Loben Sels Dec. ¶9, 59:6-11 |
| 48. | The purpose of the image was for nonexclusive use in future BBG advertising and marketing for its products without limitation in scope. | van Loben Sels Dec. ¶28, ¶¶11 and 13<br>van Loben Sels Dec. ¶9, 26:8-23<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15, 32:1-3<br>van Loben Sels Dec. ¶9, 53:9-25<br>van Loben Sels Dec. ¶8, 66:10-13<br>van Loben Sels Dec. ¶3<br>van Loben Sels Dec. ¶11, 115:23-25 - 116:1-9<br>van Loben Sels Dec. ¶11, 116:15-17 |
| 49. | BBG informed Fugnetti that the image would be used on future packaging and marketing materials. | van Loben Sels Dec. ¶8, 71:6-12<br>van Loben Sels Dec. ¶3<br>van Loben Sels Dec. ¶9 26:8-23<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15<br>van Loben Sels Dec. ¶9, 42:16-24<br>van Loben Sels Dec. ¶4, ¶¶3, 7, 8,.40, 41 |

9

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 50. | Fugnetti was told that the image was to be used by BBG for any purpose | van Loben Sels Dec. ¶9, 37:23-24<br>van Loben Sels Dec. ¶9, 42:4-24<br>van Loben Sels Dec. ¶4, ¶¶7, 8,.40, 41<br>van Loben Sels Dec. ¶3 |
| --- | --- | --- |
| 51. | Fugnetti confirmed his understanding that BBG would use the image without restriction. | van Loben Sels Dec. ¶9, 48:17-49:14<br>van Loben Sels Dec. ¶9, 82:4-25<br>van Loben Sels Dec. ¶4<br>van Loben Sels Dec. ¶3 |
| 52. | It was in the ordinary course of business for MIAD to provide images without restrictions, especially to commercial clients. | van Loben Sels Dec. ¶11, 36:22-25<br>van Loben Sels Dec. ¶11, 118:16-119:16<br>van Loben Sels Dec. ¶11, 172:2-15<br>van Loben Sels Dec. ¶11, 177:2-11 |
| 53. | BBG was considered one of MIAD's commercial clients. | van Loben Sels Dec. ¶11, 118:16-119:9 |
| 54. | MIAD understood that if commercial clients like BBG were restricted by MIAD from using the Images, they would not hire MIAD. | van Loben Sels Dec. ¶11, 118:16-119:16 |
| 55. | MIAD had a copyright notice. | van Loben Sels Dec. ¶15 |
| 56. | MIAD used its copyright notice on car posters it produced but knowingly did not put the notice on works produced for its | van Loben Sels Dec. ¶11, 118:16-119:16 |

10
BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | commercial clients, including BBG. | |
| 57. | None of the examples incorporating the Image contain MIAD's copyright notice. | van Loben Sels Dec. ¶15 |
| 58. | MIAD allowed its commercial clients to use images in various ways to generate revenue. | van Loben Sels Dec. ¶11, 118:16-119:16 |
| 59. | If BBG did not have exclusive use of the image, it would not have hired MIAD. | van Loben Sels Dec. ¶8, 71:25-72: 6 van Loben Sels Dec. ¶9, 48: 17-49:14 |
| 60. | BBG wanted to use the Image in marketing materials including catalogs, posters, packaging. | van Loben Sels Dec. ¶9, 49:19-25 van Loben Sels Dec. ¶9, 53:9-25 |
| 61. | MIAD produced flyers, brochures, posters. | van Loben Sels Dec. ¶11, 73: 3-22 |
| 62. | Dennis Fugnetti did not produce any flyers, brochures or posters for MIAD. | van Loben Sels Dec. ¶11, 73:3-22 van Loben Sels Dec. ¶11, 74: 4-12 |
| 63. | It was in the ordinary course of MIAD's business not to issue written agreements. | van Loben Sels Dec. ¶11, 37:1-3 van Loben Sels Dec. ¶11, 110:23-25 - 111:1 |
| 64. | It was in the ordinary course of MIAD's business to provide | van Loben Sels Dec. ¶11, 30:15-17 |

11

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | services to its commercial clients on a project by project basis. | |
| 65. | BBG engaged MIAD on a project-by-project basis to provide photographs used in various projects. | van Loben Sels Dec. ¶28<br>van Loben Sels Dec. ¶8, 33:1-20<br>van Loben Sels Dec. ¶9, 23:12-23<br>van Loben Sels Dec. ¶9, 42:4-24<br>van Loben Sels Dec. ¶9, 53:9-25 |
| 66. | BBG discontinued using MIAD's services in 2003. | van Loben Sels Dec. ¶8, 99:22-100:5<br>van Loben Sels Dec. ¶9, 67:11-68:4 |
| 67. | Fugnetti visited BBG offices at least three times in 2004 | van Loben Sels Dec. ¶8, 102:4-25<br>van Loben Sels Dec. ¶9, 82:4-25<br>van Loben Sels Dec. ¶9, 69:1-70:16 |
| 68. | At the time of Fugnetti's visit, the Image was used on marketing materials displayed in the BBG offices | van Loben Sels Dec. ¶9, 82: 4-25<br>van Loben Sels Dec. ¶23 |
| 69. | Upon his request, Fugnetti was provided a physical copy of a catalog using the Image. | van Loben Sels Dec. ¶9, 82:4-25<br>van Loben Sels Dec. ¶24 |
| 70. | Fugnetti made a bid on the catalog project. | van Loben Sels Dec. ¶9, 82:11-19 |
| 71. | Fugnetti knew BBG continued to use the Image. | van Loben Sels Dec. ¶11, 106, 3-16<br>van Loben Sels Dec. ¶11, 103, 19-25<br>van Loben Sels Dec. ¶4<br>van Loben Sels Dec. ¶9, 82:4-25 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 72. | BBG used the Image less frequently and by December 2018, decided to cease using it altogether. | van Loben Sels Dec. ¶10, 72:4-23 |
| 73. | On May 19, 2017, Fugnetti offered a "lifetime exclusive rights" to the Image. | van Loben Sels Dec. ¶10, 63:10-24 |
| 74. | An Invoice dated June 9, 2017 is printed under the MIAD letterhead for $5,200.00. | van Loben Sels Dec. ¶26 |
| 75. | The Job Description for the June 9, 2017 Invoice is: "Limited use of Flying Pigeon copyright for print and web." | van Loben Sels Dec. ¶26 |
| 76. | On August 29, 2018, Fugnetti wrote that he would "sign off" in response to an email message from BBG counsel Robert Fish agreeing to assign rights to the Image for $5,200.00. | van Loben Sels Dec. ¶25 |
| 77. | Fugnetti, through counsel, sent BBG correspondence concerning the Image on December 12, 2018. | Doc 1, Exh. H |
| 78. | Fugnetti exchanged email messages with the Copyright Office after April 2, 2019. | van Loben Sels Dec. ¶27 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 79. | Fugnetti received email confirmation of registration of Vau001349636 from the Copyright Office on April 9, 2019. | van Loben Sels Dec. ¶27 |
| 80. | Fugnetti filed a Complaint against BBG on May 6, 2019. | Doc 1 |
| 81. | Alana did not know of any other of Fugnetti's business interests other than MIAD Communications | van Loben Sels Dec. ¶12, 27:11 - 28:13 |
| 82. | Alana has failed to ascertain the passwords necessary to access Fugnetti's electronic records and documents related to this case. | van Loben Sels Dec. ¶12, 24:15-20 |
| 83. | Only some of Fugnetti's business and financial records are available. | van Loben Sels Dec. ¶12, 29:5-25 – 30:7-16 |

## ISSUE 3

Plaintiff's claim of copyright infringement is barred because The Dennis Fugnetti Photography Trust lacked standing to initiate legal action against BBG because title to the image was never owned by Dennis Fugnetti and there are no issues of material fact.

| **Uncontroverted Material Fact** | **Supporting Evidence Citation** |
| --- | --- |
|  |  |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 84. | **MIAD was a partnership formed on August 15, 1974.** | van Loben Sels Dec. ¶11, 127:15-22<br>van Loben Sels Dec. ¶14 |
| --- | --- | --- |
| 85. | The initial partners of MIAD were Joseph M. Bischetsrieder and Dennis Fugnetti. | van Loben Sels Dec. ¶11, 127:15-22<br>van Loben Sels Dec. ¶14 |
| 86. | The written MIAD Articles of Partnership were executed by Joseph M. Bischetsrieder and Dennis Fugnetti on August 15, 1974. | van Loben Sels Dec. ¶14, Section 10.7.1<br>van Loben Sels Dec. ¶11, 127:15-22<br>van Loben Sels Dec. ¶11, 143: 3-13 |
| 87. | MIAD owned all title and held all property as partnership property. | van Loben Sels Dec. ¶14, Section 1.6<br>van Loben Sels Dec. ¶11, 132:21 - 133:7<br>van Loben Sels Dec. ¶11, 138:8-24 |
| 88. | Section 1.6 of the Articles of Partnership state:<br>"The Partnership will take title and hold all property as partnership property irrespective of the name in which same is vested. The interest of each partner therein will not be as tenants in common but as tenants in partnership." | van Loben Sels Dec. ¶14 |
| 89. | Joseph M. Bischetsrieder and Dennis Fugnetti managed MIAD equally. | van Loben Sels Dec. ¶11, 136:1-23 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 90. | Section 3.1 of the Articles of Partnership state: "The overall management and control of the business and affairs of the Partnership shall be vested in the Partners, collectively." | van Loben Sels Dec. ¶14 |
| 91. | Joseph M. Bischetsrieder and Dennis Fugnetti equally drew a salary from MIAD. | van Loben Sels Dec. ¶11, 140:12-24 van Loben Sels Dec. ¶14, Section 4.1 |
| 92. | Section 1.2 of the Articles of Partnership State: "The Partnership is formed for the limited purpose of conducting a commercial, industrial studio of photography . . .." | van Loben Sels Dec. ¶14 |
| 93. | Joseph M. Bischetsrieder and Dennis Fugnetti agreed that MIAD owned whatever business each of them obtained and performed. | van Loben Sels Dec. ¶11, 141:6-25 |
| 94. | Section 4.2 of the Articles of Partnership states: "Each Partner agrees, that whatever business each Partner | van Loben Sels Dec. ¶14 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| | obtains, and performs is strictly part of the Partnership." | |
| 95. | Neither Joseph M. Bischetsrieder or Dennis Fugnetti were allowed to pursue ventures outside MIAD. | van Loben Sels Dec. ¶11, 141:6-25 |
| 96. | Section 4.2 of the Articles of Partnership states: "There shall be no photographic outside ventures." | van Loben Sels Dec. ¶14 |
| 97. | MIAD used the notice "© MIAD" on certain of its published works. | van Loben Sels Dec. ¶11, 118:16-119:19 |
| 98. | MIAD intentionally did not mark © MIAD on the works it produced for BBG. | van Loben Sels Dec. ¶11, 118:16-119:16 |
| 99. | During the entirety of MIAD's existence, from its formation in 1974 to its dissolution in April 18, 2014, MIAD did not register any of its works with the US Copyright Office. | van Loben Sels Dec. ¶11, 154:1-9 |
| 100. | On October 6, 1999, MIAD issued an invoice to BBG in the amount of $93.63, which BBG paid in full, for a collection of images of pigeon and geese. | van Loben Sels Dec. ¶16 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 101. | On December 1, 1999, MIAD issued an invoice to BBG in the amount of $754.25, which BBG paid in full, for photography & film charges pigeons. | van Loben Sels Dec. ¶18 |
| 102. | On December 1, 1999, MIAD issued an invoice to BBG in the amount of $1,185.25, which BBG paid in full, for travel time and film related to the collection of images of pigeon and geese. | van Loben Sels Dec. ¶17 |
| 103. | MIAD issued the December 1, 1999 for $1,185.25 invoice twice. | van Loben Sels Dec. ¶9, 57:25-58:1-9 |
| 104. | The October 6, 1999 Invoice and the December 1, 1999 Invoices were payments for the Image. | van Loben Sels Dec. ¶9, 59:6-11 |
| 105. | Joseph M. Bischetsrieder and Dennis Fugnetti both contributed to the creation of the pigeon image while employed by MIAD. | van Loben Sels Dec. ¶11, 73: 3-22<br>van Loben Sels Dec. ¶11, 75:7-18<br>van Loben Sels Dec. ¶11, 86:8-22 |
| 106. | Bruce Donoho provided a drawing of a bird to illustrate the positioning he wanted to see in the final image. | van Loben Sels Dec. ¶8, 132:8-11<br>van Loben Sels Dec. ¶9, 28:6-21<br>van Loben Sels Dec. ¶9, 29:4-15 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 107. | BBG representative Bruce Donoho chose the pigeon image. | van Loben Sels Dec. ¶11, 75:7-18 |
|---|---|---|
| 108. | JMB used software to digitally process the pigeon image. | van Loben Sels Dec. ¶11, 75:7-18 |
| 109. | BBG discontinued using MIAD's services in 2003. | van Loben Sels Dec. ¶8, 99:22-100:5<br>van Loben Sels Dec. ¶9, 67:11-68:4 |
| 110. | Fugnetti visited BBG offices at least three times in 2004 | van Loben Sels Dec. ¶8, 102:4-25<br>van Loben Sels Dec. ¶9, 82:4-25<br>van Loben Sels Dec. ¶9, 69:1-70:16 |
| 111. | At the time of Fugnetti's visit, the Image was used on marketing materials displayed in the BBG offices | van Loben Sels Dec. ¶9, 82: 4-25<br>van Loben Sels Dec. ¶23 |
| 112. | Upon his request, Fugnetti was provided a physical copy of a catalog using the Image. | van Loben Sels Dec. ¶9, 82:4-25<br>van Loben Sels Dec. ¶24 |
| 113. | Fugnetti made a bid on the catalog project. | van Loben Sels Dec. ¶9, 82:11-19 |
| 114. | Fugnetti knew BBG continued to use the Image. | van Loben Sels Dec. ¶11, 106, 3-16<br>van Loben Sels Dec. ¶11, 103, 19-25<br>van Loben Sels Dec. ¶4<br>van Loben Sels Dec. ¶9, 82:4-25 |
| 115. | BBG had used the Image less frequently and by December 2018, decided to cease using it altogether. | van Loben Sels Dec. ¶10, 72:4-23 |

19

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 116. | Joseph M. Bischetsrieder and Dennis Fugnetti amended the MIAD Articles of Partnership on January 1, 2010 by executing an Amendment to Articles of Partnership, MIAD Photography. | van Loben Sels Dec. ¶11, 144:1-23<br>van Loben Sels Dec. ¶20 |
|------|------|------|
| 117. | The 2010 Amendment added Irene J. Bischetsrieder and Alana J. Fugnetti to the MIAD partnership. | van Loben Sels Dec. ¶11, 145:8-17<br>van Loben Sels Dec. ¶20 |
| 118. | MIAD was amended again on December 31, 2011 to remove Joseph M. Bischetsrieder and Dennis Fugnetti as partners. Irene J. Bischetsrieder and Irene J. Bischetsrieder were left as equal partners. | van Loben Sels Dec. ¶11, 149:2-16<br>van Loben Sels Dec. ¶20 |
| 119. | Joseph M. Bischetsrieder and Dennis Fugnetti continued to work for the partnership. | van Loben Sels Dec. ¶11, 149:20-23 |
| 120. | MIAD was dissolved on April 18, 2014. | van Loben Sels Dec. ¶11, 65:19-25 -<br>van Loben Sels Dec. ¶11, 66:1<br>van Loben Sels Dec. ¶20 |
| 121. | MIAD's asset list included no copyrights. | van Loben Sels Dec. ¶11, 152:4-6<br>van Loben Sels Dec. ¶20 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 122. | Once dissolved, the MIAD assets were transferred to Alana J. Fugnetti dba MIAD Photography. | van Loben Sels Dec. ¶11, 151:13-152:3<br>van Loben Sels Dec. ¶20 |
|---|---|---|
| 123. | The effective date of the Certificate of Registration is October 23, 2018. | van Loben Sels Dec. ¶6 |
| 124. | The Certificate of Registration for the Image only lists Dennis Fugnetti as the author and the claimant. | van Loben Sels Dec. ¶6 |
| 125. | The response to the "Work Made for Hire" section on the Certificate of Registration is "NO". | van Loben Sels Dec. ¶6 |
| 126. | The effective date of the Certificate of Registration is October 23, 2018. | van Loben Sels Dec. ¶6 |
| 127. | Alana J. Fugnetti and Dennis Fugnetti formed The Dennis M. Fugnetti and Alana J. Fugnetti Trust on 1990. | van Loben Sels Dec. ¶21, Para 3 |
| 128. | Dennis Fugnetti executed his last will and testament on May 22, 1991. | van Loben Sels Dec. ¶21, Para 5<br>van Loben Sels Dec. ¶21, Ex. A |
| 129. | Dennis Fugnetti passed away January 2020. | van Loben Sels Dec. ¶20 |

21

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 130. | Alana Fugnetti executed the Dennis Fugnetti Photography Trust on August 21, 2020. | van Loben Sels Dec. ¶21, Ex. B |
| 131. | The Grantor of the Dennis Fugnetti Photography Trust is Alana J. Fugnetti, the Trustee of the Trust is Katie Fugnetti, the Successor Trustee of the Trust is Alana J. Fugnetti. | van Loben Sels Dec. ¶21, Ex. B, p. 13 |
| 132. | Alana J. Fugnetti executed a transfer of the Copyright Registration from Alana J. Fugnetti personally and on behalf of The Dennis M. Fugnetti and Alana J. Fugnetti Trust, dated 1990 to The Dennis Fugnetti Photography Trust. | van Loben Sels Dec. ¶21, Ex. C |
| 133. | Katie never worked for MIAD | van Loben Sels Dec. ¶11, 111:22-25 – 112<br>van Loben Sels Dec. ¶13, 17:13-18:24<br>van Loben Sels Dec. ¶22 |
| 134. | Alana had no personal knowledge of MIAD's day-to-day operations. | van Loben Sels Dec. ¶12, 13:22-4<br>van Loben Sels Dec. ¶12, 14:12-22 |
| 135. | Alana did not get to know MIAD customers. | van Loben Sels Dec. ¶12, 36:14-17 |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| 136. | Alana never accompanied Dennis Fugnetti on any photoshoots | van Loben Sels Dec. ¶12, 39:21-24 |
| 137. | BBG registered the Image with the USPTO, Reg. No. 3,000,872 | van Loben Sels Dec. ¶5 |

## CONCLUSIONS OF LAW

1.       "Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Studio S* at *3 (C.D. Cal. June 21, 2021), quoting FED. R. CIV. P. 56(a). "A factual issue is "genuine" when there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor.

2.       The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The moving party will win summary judgment unless there is "evidence on which a jury could reasonably find for the non-moving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

3.       When the contested issue in copyright infringement action is the scope of a license, rather than existence of one, the copyright owner bears the burden of proving that defendant's copying was unauthorized under the license, in which case the license need not even be pleaded as affirmative defense. *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020).

23

4.      There is no evidence in the summary judgment record to support a
contention that BBG's use of the Image was limited in scope. Neither MIAD, nor
its principles, ever communicated a limitation of scope to BBG; in fact, MIAD's
business protocol established that its commercial clients, like BBG, were
permitted to use images wholly without restriction.  As a result, BBG's license to
use the Pigeon Image was unlimited.

5.      An implied non-exclusive license is granted when "(1) a person (the
licensee) requests the creation of a work, (2) the creator (the licensor) makes that
particular work and delivers it to the licensee who requested it, and (3) the
licensor intends that the licensee-requestor copy and distribute his work." *Asset
Mktg. Sys., Inc. v. Gagnon,* 542 F.3d 748, 754–55 (9th Cir.2008).

6.      All admissible evidence in the summary judgment record
demonstrates that BBG met the elements of an implied nonexclusive license as a
matter of law. First, BBG requested the Image from MIAD. Second, MIAD
delivered the Image BBG.

7.      When considering the third element, the licensor's intent, courts
consider the totality of the parties' conduct to determine whether the licensor
intended to grant the licensee permission to use the work. *Michaels v. Internet
Entm't Grp., Inc.,* 5 F.Supp.2d 823, 831 (C.D.Cal.1998) Courts have allowed
intent to be demonstrated by the totality of the factors, and the relevant intent is
"the licensor's objective intent at the time of the creation and delivery," not
subjective intent. *Asset Mktg. Sys. Inc.,* 542 F.3d at 756.

8.      The Ninth Circuit further provided guidance in considering the
following factors persuasive: (1) whether the parties were engaged in a short-term
discrete transaction as opposed to an ongoing relationship; (2) whether the creator
utilized written contracts ... providing that copyrighted materials could only be
used with the creator's future involvement or express permission; and (3) whether
the creator's conduct during the creation or delivery of the copyrighted material

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS
OF LAW

indicated that use of the material without the creator's involvement or consent was permissible. *Asset Marketing Sys.,* 542 F.3d at 756.

9.     In this case, Fugnetti has no admissible evidence as a matter of law to refute that MIAD provided the Image in a short-term discrete transaction. It was, in fact, MIAD's standard practice to work with its commercial clients on a project-by-project basis. In applying the test, these short-term discrete transactions between Fugnetti and BBG weighs in favor of finding an implied license. As to the second factor: MIAD had commercial clients, including Cannon and BBG, for whom it was standard practice to provide services without issuing written agreements of any kind. As for the third factor, Fugnetti has no admissible evidence to establish that MIAD restricted BBG's use of the Image. MIAD as a matter of course understood that commercial clients would not hire MIAD if use of these images were restricted. This understanding was so strong that commercial clients did not need to raise this request. Demonstrative of this this approach, MIAD used its copyright notice judiciously: intentionally placing it on, for example, posters of automobile but not on images provided for its commercial clients. Fugnetti has not produced any evidence demonstrating MIAD's copyright notice on work provided to BBG.

10.     "If consideration is paid, a license is irrevocable because a non exclusive license supported by consideration is a contract." *Reinicke v. Creative Empire Ltd. Liab. Co.*, 38 F. Supp. 3d 1192, 1203 (S.D. Cal. 2014) citing *Asset Mktg.* at 757. "If an implied license accompanied by consideration were revocable at will, the contract would be illusory." *Reinicke, supra*. Consideration is

> "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

*Id*. quoting CAL. CIV. CODE § 1605.

11.     The undisputed facts establish BBG paid MIAD consideration for the Pigeon Image. Plaintiff cannot demonstrate any deficiency with the consideration paid by BBG. Indeed, Plaintiff has no admissible evidence to create a fact issue on this point.

12.     Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights,'" (*Danjaq Ltd. Liab. Co. v. Sony Corp.,* 263 F.3d 942, 950-51 (9th Cir. 2001) quoting *S. Pac. Co. v. Bogert*, 250 U.S. 483, 500 (1919)), *i.e.*, "an equitable time limitation on a party's right to bring suit." *Kling v. Hallmark Cards, Inc*., 225 F.3d 1030, 1036 (9th Cir. 2000). "To obtain a judgment on this affirmative defense, a defendant must prove 'both an unreasonable delay by the plaintiff and prejudice to itself.'" *Id*. quoting *Couveau v. American Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2000).

13.     "Courts make laches determinations 'with reference to the limitations period for the analogous action at law.'" *Synoptek, LLC*, at *16 (C.D. Cal. June 4, 2018) quoting *Jarrow Formulas Inc. v. Nutrition Now Inc*., 304 F.3d 829, 835-36 (9th Cir. 2002). "If the plaintiff filed within that period, there is a strong presumption against laches. If the plaintiff filed outside that period, the presumption is reversed." *Synoptek, supra*, quoting *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) (internal quotations omitted). The statute of limitations for copyright infringement is three years. 17 U.S.C. 507(b).

14.     "Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights,'" (*Danjaq Ltd. Liab. Co. v. Sony Corp.,* 263 F.3d 942, 950-51 (9th Cir. 2001) quoting *S. Pac. Co. v. Bogert*, 250 U.S. 483, 500 (1919)).  "To obtain a judgment on this affirmative defense, a defendant must prove 'both an

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

1  unreasonable delay by the plaintiff and prejudice to itself.'" *Id.* quoting *Couveau*
2  *v. American Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2000).

3      15.    Under the "general rule for laches: any delay is to be measured from
4  the time that the plaintiff knew or should have known about the potential claim at
5  issue." *Kling v. Hallmark Cards, Inc*., 225 F.3d 1030, 1031 (9th Cir. 2000) "When
6  applying the equitable doctrine of laches in order to bar a claim, the period of
7  delay is measured from when the claimant had actual notice of the claim or would
8  have reasonably been expected to inquire about the subject matter." *Id.*

9      16.    "In determining the reasonableness of the delay, 'courts look to the
10  cause of the delay.' Delays have been held permissible when (1) 'it is necessitated
11  by the exhaustion of remedies through the administration process;' (2) 'it is used
12  to evaluate and prepare a complicated claim;' and (3) 'its purpose is to determine
13  whether the scope of the proposed infringement will justify the cost of litigation."
14  *Rimini St. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1199 (D. Nev. 2020).

15      17.    "A defendant establishes expectations-based prejudice if it shows that
16  'during the delay, it invested money to expand its business or entered into
17  business transactions based on [its] presumed rights.'" *Petrella v. Metro-*
18  *Goldwyn-Mayer*, *Inc*., 695 F.3d 946, 953 (9th Cir. 2012) (reversed on other
19  grounds); *see Petrella v. MGM*, 584 F. App'x 653, 654 n.1 (9th Cir. 2014)
20  ("Nothing in the Supreme Court opinion affects our holdings that Petrella's claims
21  for unjust enrichment and for an accounting are barred by laches.")

22      18.    "[I]n the context of laches, [the Ninth Circuit] has held that
23  substantial prejudice exists where a defendant shows that during a plaintiff's delay,
24  the defendant 'invested money to expand its business or entered into business
25  transactions based on its presumed rights.'" *Mathew v. Walt Disney Co.*, 690 F.
26  App'x 509, 511 (9th Cir. 2017) quoting *Petrella* at 953.

27      19.    Even if Fugnetti could be deemed the owner of the Image, he and his
28  alleged successors in interest did not assert their rights diligently. Their

27

unreasonable delay resulted in clear prejudice to BBG, and judgment should be entered against Plaintiff's equitable claims for disgorgement and other equitable relief.

20.     "[T]he failure to properly register a work will preclude an infringement action predicated on that work." *SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz. Inc*., 2018 U.S. Dist. LEXIS 163007, at *41 (D. Ariz. Sep. 24, 2018) citing *Olander Enters., Inc. v. Spencer Gifts, LLC*, 812 F. Supp. 2d 1070, 1078 (C.D. Cal. 2011).

21.     "Copyright ownership normally vests in the creator of the work." S*tiletto Tv, Inc. v. Hastings*, 392 F. Supp. 3d 1133, 1142 (C.D. Cal. 2019). "But if a work is a work made for hire, 'the employer or other person for whom the work was prepared is considered the author . . . , and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." *Id*. quoting 17 U.S.C. § 201(b). "A 'work made for hire' is … 'a work prepared by an employee within the scope of his or her employment.'" *Stiletto Tv, supra*, quoting 17 U.S.C. § 101.

22.     "The certificate of registration will constitute prima facie evidence of ownership, i.e., authorship and copyrightability, if the plaintiff registers the work before or within 5 years of its first publication." *Classic Concepts, Inc. v. Linen Source, Inc.*, 2006 U.S. Dist. LEXIS 96767, at *5 (C.D. Cal. Apr. 26, 2006) citing 17 U.S.C. § 410(c). "However, if the first publication occurred beyond five years of the registration date, ownership is not presumed and it is within the court's discretion what weight to give the registrations in determining ownership." *Id*. citing *Morrill v. Smashing Pumpkins*, 157 F.Supp.2d 1120, 1125-1126 (C.D. Cal. 2001).

23.     "[P]ublication includes distribution to 'persons who are under no implied or express restriction with respect to disclosure of the work's contents.'"

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, Ltd. Liab. Co.*, 925 F.3d 1140, 1146 (9th Cir. 2019).

24.     "Section 409 of the Copyright Act requires that a registration application include the name of the claimant, the name of the author, and the title of the work." *Muench Photography; Inc. v. Pearson Educ., Inc.*, 2013 U.S. Dist. LEXIS 165884, at *32 (N.D. Cal. Nov. 19, 2013) citing 17 U.S.C. § 409(9). "Any application that omits such information for a given work would be insufficient to obtain copyright registration for that work." *Id.*  "The only parties who are eligible to be the copyright claimant are (i) the author of the work, or (ii) a copyright owner who owns all of the exclusive rights in the work." *Compendium*, §404, citing 37 C.F.R. § 202.3(a)(3).

25.     Inaccuracies in an application will not in themselves cause the registration to be invalid, "unless (1) "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate," and (2) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, Ltd. Liab. Co.*, 925 F.3d 1140, 1144 (9th Cir. 2019) quoting 17 U.S.C. §411(b). "[T]he plain language of § 411(b) . . . does not require a showing of fraud, but only that the claimant included inaccurate information on the application 'with knowledge that it was inaccurate.'" *Starbuzz Tobacco v. Gold Star Tobacco*, 2019 U.S. Dist. LEXIS 238640, at *20-21 (C.D. Cal. July 3, 2019) (quoting *Gold Value* at 1147).

26.     "[I]gnorance of the law," [sic] is "no excuse," and [sic] a showing of fraudulent intent is not required to invalidate a copyright registration under § 411(b). Moreover, the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, the knowledge requisite to knowing violation of a statute is

29

factual knowledge as distinguished from knowledge of the law." *Gold Value* at 1147 quoting *Bryan v. United States*, 524 U.S. 184, 192, (1998) (emphasis added).

27.     Where the Defendant plausibly alleges the inaccurate information was knowingly included in the registration application, "a district court is then required to submit a request to the Register of Copyrights 'to advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration.'" *Dr. Seuss Enters., Ltd. P'ship v. ComicMix Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 149221, at *13 (S.D. Cal. Aug. 9, 2021) citing 17 U.S.C. § 411(b)(1)-(2).

|  |  |
|---|---|
| DATED: September 6, 2021 | Respectfully submitted, FISH IP LAW, LLP |
|  | /s/ *John van Loben Sels/* John van Loben Sels Attorneys for Defendant, BIRD-B-GONE, INC. |

BBG'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's CM/ECF system on September 6, 2021.

*/s/ John van Loben Sels*
John van Loben Sels, Esq.

CERTIFICATE OF SERVICE