

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| DENNIS FUGNETTI PHOTOGRAPHY TRUST,<br><br>          Plaintiff,<br><br>     v.<br><br>BIRD B GONE, INC., and DOES 1 through 10 inclusive,<br><br>          Defendants. | Case No.: SACV 19-00847-CJC(DFMx)<br><br><br>ORDER DENYING BIRD B GONE, INC.'S MOTION FOR SUMMARY JUDGMENT [Dkt. 97] AND DENYING IN PART AND GRANTING IN PART DENNIS FUGNETTI PHOTOGRAPHY TRUST'S MOTION FOR SUMMARY JUDGMENT [Dkt. 98] |

## I. INTRODUCTION

On May 6, 2019, Plaintiff Dennis Fugnetti filed this action against Defendants Bird-B-Gone Inc. and unnamed does alleging that Defendants infringed upon Plaintiff's copyright when it used and trademarked a photograph of a flying pigeon ("the flying pigeon image") he created while operating a partnership called MIAD Photography. (Dkt. 1 [Complaint, hereinafter "Compl."].)  Defendant Bird-B-Gone Inc. ("BBG") counterclaimed, alleging breach of contract and breach of nonexclusive license against Fugnetti.  (Dkt. 32 [Amended Counterclaims and Answer].)  Unfortunately, in January 2020 Mr. Fugnetti passed away.  In his stead, the Court granted a motion to substitute the Dennis Fugnetti Photography Trust ("the Photography Trust") as Plaintiff.  (Dkt. 67 [Order Granting Plaintiff's Motion to Substitute].)  Now before the Court are the parties' cross motions for summary judgment.  (Dkt. 97 [Defendants' Motion for Summary Judgment, hereinafter "BBG's MSJ"], Dkt. 98 [Plaintiff's Motion for Summary Judgment, hereinafter "the Photography Trust's MSJ"].)  For the following reasons, BBG's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and the Photography Trust's motion for summary judgment is **DENIED**.[1]

## II. BACKGROUND

The following facts are undisputed unless otherwise noted.  In 1992, Bruce Donoho founded Bird-B-Gone, Inc., the world's largest manufacturer of professional grade bird deterrents.  (Dkt. 97-2 [BBG's Statement of Uncontroverted Facts, hereinafter "BBG's SUF"] ¶¶ 1, 2.)  MIAD Photography ("MIAD") was a general partnership the late Dennis Fugnetti and Joseph Bischetsrieder formed in 1974 to provide professional photography services to its clients.  (Dkt. 100-2 [BBG's Response to Photography Trust's

---

[1]  Having read and considered the papers presented by the parties, the Court finds these matters appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.

Separate Statement of Undisputed Facts, hereinafter "BBG's RSUF"] ¶ 1, 3.)  From approximately 1996 to about 2004, BBG retained MIAD on a project-by-project basis to complete certain photography and marketing projects for the company.  (Dkt. 101-2 [Photography Trust's Response to BBG's Statement of Undisputed Facts, hereinafter "Photography Trust RSUF"] ¶ 30.)

Core to the present dispute between the parties is the exact scope of what MIAD was hired to do for BBG and the extent of any license MIAD may have provided to BBG to use the flying pigeon image.  In approximately mid-1999, BBG engaged MIAD to provide an image of a bird that would be used to demonstrate its bird deterrent products, though the Photography Trust contends that the it never intended to supply solely the pigeon image, but rather the image incorporated into BBG's marketing materials.  (Photography Trust RSUF ¶ 3.)  According to Mr. Donoho, he specified that he wanted a bird image that Defendant could use going forward in whatever advertising and marketing materials Defendant chose to produce and use.  (Photography Trust RSUF ¶¶ 13–15.)

Shortly after BBG engaged MIAD, Mr. Fugnetti went to a nearby beach and began photographing flying pigeons to try to capture what BBG specified.  (BBG's RSUF ¶ 33.)  Mr. Fugnetti took several images, although the exact amount is disputed, some of which were presented for BBG's review.  (BBG's RSUF ¶¶ 36, 37.)  Mr. Donoho, and another BBG employee Stephanie Fitzpatrick, indicated that they liked one such image, known for the purposes of resolving these motions as "the flying pigeon image."  (BBG's RSUF ¶ 38.)  Mr. Bischetsrieder used Photoshop to incorporate the image into a larger marketing material.  (BBG's RSUF ¶ 45; 98-6 [Declaration of Joseph M. Bischetsrieder, hereinafter "Bischetsrieder Decl."] ¶¶ 36–38.)  When he edited the image, Mr. Bischetsrieder "flattened" the image to prevent the extraction of the pigeon image from

the larger marketing material.[2]  (Bischetsrieder Decl. ¶ 38.)  BBG paid MIAD a total of $2,033.13 for its work, although the parties dispute on whether a portion of that payment was solely for the flying pigeon image or just for MIAD's work on the initial marketing materials and subsequent projects MIAD designed which incorporated the flying pigeon image for BBG.  (Photography Trust's RSUF ¶¶ 43–45.)

Specifically, the Photography Trust contends that it never hired MIAD to only supply a single image or single piece of deliverable product of the flying pigeon image, but rather "all inclusive" marketing materials that "were more than just taking pictures." (*Id.*)  Whereas BBG contends that it hired MIAD for both taking pictures and discretionary marketing projects incorporating the flying pigeon image.  (*Id.*)

Though the Photography Trust does not dispute that MIAD granted BBG a nonexclusive license to use the image as incorporated in works MIAD designed for BBG, the Photography Trust maintains that the scope of the license ends there.  (Photography Trust's RSUF ¶ 13.)  However, the Photography Trust does not dispute that BBG informed Mr. Fugnetti that the image would be used on future advertising and marketing materials.  (*See* Photography Trust's RSUF ¶¶ 15, 49.)

Between 2002 and 2003, BBG stopped using MIAD's services.  (BBG's RSUF ¶¶ 49, 50.)  It is undisputed, that on at least three occasions in 2004, Mr. Fugnetti visited BBG's office and asked to bid on additional marketing work.  (BBG's SUF ¶ 32.)  BBG contends that Mr. Fugnetti witnessed several marketing materials that incorporated the flying pigeon image that MIAD had no role in creating or producing.  (BBG's SUF ¶¶ 33–36.)  According to BBG, Mr. Fugnetti did not object in any manner upon seeing those

---

[2] BBG objects to Mr. Bischetsrieder's declaration because it was originally submitted was initially undated.  (Dkt. 106 at 4.)  The Court assumes that this was a result of excusable neglect, which the Photography Trust has since corrected.  (Dkt. 104–5.)

images, although the Photography Trust contends that Mr. Fugnetti did not know that BBG continued to use the flying pigeon image after the relationship between MIAD and BBG ended.  (Photography Trust's RSUF ¶ 36.)  A short time after the relationship between BBG and MIAD ended in 2003, BBG trademarked the flying pigeon image and began using the image on product packaging that MIAD did not design or have any role in creating, prompting the present action.  (BBG's RSUF ¶ 52.)

Mr. Fugnetti subsequently registered the flying pigeon image with the United States Copyright Office and was issued a registration with an effective date of October 23, 2018.  (BBG's RSUF ¶ 73.)  BBG disputes the validity of that copyright.  (*Id.*)

## III. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual issue is "genuine" when there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law.  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 249.  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 325.

When the nonmovant would have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential

element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325.  If the movant meets this burden, the nonmoving party must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

The court does not make credibility determinations or weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).  But conclusory and speculative testimony in affidavits or moving papers is insufficient to raise triable issues of fact and defeat summary judgment.  *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## IV.  DISCUSSION

### A. BBG's Motion for Summary Judgment

BBG moves for summary judgment as two of its affirmative defenses: (1) implied non-exclusive license and (2) laches.[3]  (BBG's MSJ at 8–18.)  The Court takes each in turn.

---

[3] BBG also argues that the Photography Trust lacks standing to assert its copyright claim because Mr. Fugnetti's copyright registration is invalid under 17 U.S.C. § 411(a) since he named himself as the author of the image on the copyright application, rather than MIAD.  (BBG's MSJ at 19–25.)  First, this is inaccurate.  Mr. Fugnetti identified both himself and MIAD as the authors on his copyright application.  (Dkt. 97-3 [Declaration of John van Loben Sels in support of BBG's MSJ, hereinafter "Sels Decl."], Dkt. 97-7 [Exhibit D to Sels Decl., Copyright Registration Certificate of flying pigeon image].)

1          **1.     Implied Non-Exclusive License**

2

3          An implied license is granted when: "'(1) a person (the licensee) requests the

4   creation of a work, (2) the creator (the licensor) makes that particular work and delivers it

5   to the licensee who requested it, and (3) the licensor intends that the licensee-requestor

6   copy and distribute his work.'"  *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754-55

7   (9th Cir. 2008) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)).  To be

8   clear, the Photography Trust does not assert a claim of infringement as to any materials

9   that MIAD created for BBG during the course of the parties' relationship.  "Rather, the

10  Photography Trust contends that BBG engaged in infringing use of the Flying Pigeon

11  Image by asserting trademark protection over it, and utilizing it on subsequent retail

12  products box designs that MIAD did not create."  (Dkt. 101 [Photography Trust's

13  Opposition to BBG's Mot., hereinafter "Photography Trust's Opp."] at 3.)  Indeed, there

14  is no dispute "that BBG had a license to use the Flying Pigeon Image within the specific

15  projects and materials that MIAD designed and delivered to BBG."  (*Id.*)  The Court thus

16  focuses its analysis on whether MIAD granted an implied license to BBG that included

17  trademarking the Flying Pigeon Image and using the image on its retail boxes.

18

19          **a)  Requests, Makes, and Delivers the Work**

20

21          There is no genuine issue of material fact as to whether BBG requested the

22  creation of the flying pigeon image and whether MIAD made the image.  Indeed, neither

23

24  ────────────────────────────────────────────

25  And even if this was a error, there is no evidence that it was not made in good faith.  *See Unicolors Inc. v. H&M Hennes & Mauritz, L.P.*, 141 S.Ct. 2698 (2021) (holding that good faith mistakes of fact or law in filing a copyright application will not render the copyright registration invalid).  There is also a genuine dispute of material fact as to whether a mistake was made in the first place since the Photography Trust contends that all of MIAD's interests were transferred to Mr. Fugnetti and his wife upon the dissolution of the MIAD partnership.  (BBG's RSUF ¶¶ 4–8; Bischetsrieder Decl. ¶¶ 5–14.)  Since these interests were transferred to the Photography Trust, including the copyright over the flying pigeon image, the Court cannot grant summary judgment on this issue.

party disputes that the summary judgment record establishes that BBG requested MIAD
provided BBG with a picture of a pigeon in flight to use in its commercial marketing
materials.  (Photography Trust's RSUF ¶ 3; Photography Trust's Opp. at 3.)  Nor is there
dispute that Mr. Fugnetti took the flying pigeon image and Mr. Bischetsrieder
subsequently edited the image.  (BBG's RSUF ¶¶ 36, 37; BBG's RSUF ¶ 45; 98-6
[Declaration of Joseph M. Bischetsrieder, hereinafter "Bischetsrieder Decl."] ¶¶ 36–38.)


        But the Photography Trust contends that MIAD never *delivered* the flying pigeon
image because MIAD never provided the "raw" version of the image to BBG, only the
"finalized design projects incorporating those [raw] images for which MIAD was
separately paid."  (Opp. at 3; Photography Trust's RSUF ¶¶ 43–45.)  The Photography
Trust, however, cites no law that adopts such a strict interpretation of what constitutes
delivery in the context of an implied license.  At best, the Photography Trust seems to be
extrapolating from *Asset Marketing Systems, Inc.*, in which the Ninth Circuit briefly
considered a copyright-holder's argument that he had not delivered his copyrighted
software programs to the defendant because "he never delivered the source code so that
[defendant] could modify the code" and "[i]f [defendant] did not have the right to modify
the code, it may have infringed [plaintiff's] copyright by exceeding the scope of its
license."  542 F.3d at 755.  However, the Ninth Circuit declined to analyze this argument
fully, turning instead to whether the plaintiff's "conduct manifested an objective intent to
give [the defendant] an unlimited license at the time of the creation of the work."  *Id.* at
755–56; *see Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 41 (1st Cir. 2010) (quoting
*John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 41 (1st Cir.
2003)) ("[C]ourts 'quickly pass over the request and delivery issues to focus on
manifestations of . . . intent that plans may be used on a project without [the plaintiff's]
involvement.'") (internal quotation marks omitted).  Since "courts should focus primarily
on 'the licensor's objective intent at the time of the creation and delivery of the
[copyrighted work] as manifested by the parties' conduct[,]'" the Court turns to its

analysis on whether there was objective intent to grant BBG an unlimited license at the time of the work's creation. *Corbello v. Devitto*, 777 F.3d 1058, 1067 (9th Cir. 2015) (quoting *Asset Mktg. Sys.*, 542 F.3d at 755 n.4).

### b) Licensor's Intent

"[T]he licensor's objective intent" is determined at "the time of the creation and delivery of the [work] as manifested by the parties' conduct." *Taylor Holland LLC v. MVMT Watches, Inc.*, 2016 WL 6892097, *4 (C.D. Cal. Aug. 11, 2016) (quoting *Asset Mktg. Sys.*, 542 F.3d at 756 (9th Cir. 2008)). "Intent to create a license exists when an author creates a work with the knowledge and intention that the licensee will use it for a specific purpose." *Id.* at *5. The Ninth Circuit considers the following factors to determine a licensor's objective intent: "(1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible." *Asset Mktg. Sys.*, 542 F.3d at 756.

### (1) Length of Parties' Relationship

Both parties agree that generally a long-term relationship amongst the parties suggests an "intent to remain involved in the job," weighing against finding a license, whereas short-discrete arrangements "with non-indication of [the licensor's] further involvement in the project, weighs towards a finding of a license." *Danielson*, 322 F.3d at 441; *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 516 (4th Cir. 2002). But the general rule has little applicability in this case. Case law in this Circuit,

and others, demonstrates that the general rule may be narrower in its applicability than originally thought, having developed in a line of cases all involving disputes between architects and developers where a long-term construction project is the only "project" at issue, rather than a series of discrete assignments like the present case. *See Fontana v. Harra*, 2013 WL 990014, *7 (S.D. Cal.  March 12, 2013) ("While the decisions establishing and applying this test do not limit its applicability to disputes between architects and developers, the decisions also do not suggest that the three-factor test should be mechanically followed in all of the diverse factual settings where an author's intent to license is an issue.").  Indeed, courts have found that "the existence of an ongoing relationship between the parties may be probative of intent to license, lack of intent to license, or it may not be probative of intent at all."  *Id.*; *see Assets Mktg. Sys.*, 542 F.3d at 756 (finding ongoing relationship between the parties indicated neither an intent to grant or deny a license); *Estate of Hevia*, 602 F.3d 34, 41 (1st Cir. 2010) (finding the three factor test "does not fit this case" because the parties were former partners and not engaged in an arms-length transaction).

This dispute does not involve architects and developers but a years-long relationship between a company that regularly hired an independent contractor to create individual marketing materials for it.  On the one hand, the length of the relationship may weigh against finding a license.  The Photography Trust presents evidence that Mr. Fugnetti created the Flying Pigeon image with the expectation that BBG would hire MIAD for future projects incorporating the image, which it did even after it first provided the image to BBG.  (BBG's RSUF ¶ 32; Bischetsrieder Decl. ¶¶ 22–25); *see Taylor Holland*, 2016 WL 6892097 at *6 (a plaintiff's hope that allowing the defendant to use a copyrighted image would start a "long term business relationship" between the parties made it unclear whether the plaintiff intended to grant an unlimited license to use the work).  On the other hand, there is no dispute that MIAD was an independent contractor, "a status that should not create any long-term or permanent expectations of involvement

in the company." *Numbers Licensing, LLC v. bVisual USA Inc.*, 643 F. Supp. 2d 1245, 1253 (E.D. Wash. 2009).  Given the conflicting interpretations and evidence on this issue, the Court finds this factor neutral, neither weighing for or against finding a license. *Taylor Holland*, 2016 WL 6892097 at *6 (finding this factor neutral when it is unclear whether the plaintiff intended to grant an unlimited license to use the work).

### (2) Written Contracts

There is also no contractual evidence indicating an objective intent to grant or deny a license.  Though the Photography Trust in opposition contends that "documentation presented in BBG's subsequent interaction with Mr. Fugnetti strongly suggests that both parties understood that no broad implied license existed[,]" none of that documentation is contractual evidence.  (Photography Trust's Opp. at 8.)  For example, the Photography Trust contends that when BBG first approached Mr. Fugnetti in 2017 about copyrighting the flying pigeon image so it could have exclusive rights to it, Mr. Fugnetti's initial reaction was to offer BBG a license, indicating that he understood that BBG did not have a right to use the image.  (Photography Trust's MSJ at 18; BBG's RSUF ¶¶ 68–69.) Moreover, Robert Fish, BBG's attorney, emailed Mr. Fugnetti suggesting that he may have a viable copyright infringement claim but that he believed the statute of limitations had run.  (Photography Trust's MSJ at 7; BBG's RSUF ¶ 70.)  But an offer to license and a suggestion of a claim does not constitute a contract.[4]  Nor is Mr. Fugnetti's offer of a license compelling because BBG was asking for an exclusive license, not a nonexclusive one as BBG maintains it has.  Thus, the Photography Trust has failed to raise any contractual evidence suggesting that there was intent to limit the scope of the implied license concerning the flying pigeon image.  Nor has BBG raised contractual evidence

---

[4] Nor is the Court convinced that the communications with Mr. Fish are admissible.  Mr. Fish is BBG's attorney and these communications—a series of emails between Mr. Fish, Mr. Fugnetti, and Mr. Fugnetti's daughter—appear to be made as part of an offer to compromise over obtaining the exclusive rights to the flying pigeon image and are thus excludable under Federal Rule of Evidence 408.

indicating an objective intent to grant BBG an unlimited license.  Accordingly, this factor is also neutral.

### (3) The Parties' Conduct

The third and final factor is the "the licensor's objective intent at the time of the creation and delivery of the [work] as manifested by the parties conduct." *Taylor Holland*, 2016 WL 6892097 at *5 (quoting *Asset Mktg. Sys.*, 542 F.3d at 756).  "Intent to create a license exists when an author creates a work with the knowledge and intention that the licensee will use it for a specific purpose." *Id.*; *Bangkok Broadcasting T.V. Co., Ltd. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1111 (C.D. Cal. 2010).  The Court must consider whether "the totality of the parties' conduct indicates that the licensor intended to grant the licensee permission to use the work . . . not [the parties'] subjective intent." *Reinicke v. Creative Empire LLC*, 38 F. Supp. 3d 1192, 1199 (S.D. Cal. 2014) (internal citations omitted).

There is a genuine issue of material fact as to whether MIAD intended to confer an unlimited license onto BBG for use of the flying pigeon image.  Though BBG presents evidence that it explicitly told Mr. Fugnetti that it intended to use the flying pigeon image on all of its future marketing materials, including its packaging, it also appears that MIAD took steps to prevent the flying pigeon image from being used in future marketing materials without MIAD's involvement.  For example, Mr. Bischetsrieder offers that when editing the flying pigeon image in its design work for BBG, he "flatten[ed]" the layers on the file prior to sending it, in order to prevent someone from moving or extracting any of the individual design elements from the files themselves and that MIAD never provided the "raw image" to use.  (Bischetsrieder Decl. ¶¶ 35–39.)  Additionally, neither party disputes that BBG repeatedly hired MIAD to incorporate the image in other marketing materials, giving rise to an inference that MIAD intended, and BBG

understood, that its use of the image was confined to projects that MIAD designed, rather than just the image itself.  (BBG's RSUF ¶ 18.)  Yet, BBG insists that Mr. Fugnetti's silence upon seeing other marketing materials featuring the image, that MIAD did not design, is evidence that BBG held an unlimited license.  Though the Photography Trust's evidence may not be overwhelming, read in the light most-favorable to it, the facts presented are enough to create a genuine issue of material fact at this stage.  Accordingly, BBG's motion for summary judgment on its implied license defense is **DENIED**.

### 2.   Laches

BBG has failed to meet its burden on its laches defense.  (BBG's MSJ at 12–19.)  In *Petrella v. MGM*, 572 U.S. 663, 667–68 (2014), the U.S. Supreme Court explained that "in extraordinary circumstances, laches may bar at the very threshold the particular relief request by the plaintiff" in a copyright infringement action."  Thus, "a plaintiff's delay can always be brought to bear at the remedial stage, in determining appropriate injunctive relief, and in assessing the 'profits of the infringer . . . attributable to the infringement.'"  *Id.* at 668.  However, "laches is an affirmative defense, on which the defendant has the burden[.]"  *Lent v. California Coastal Com.*, 62 Cal. App. 5th, 837 (2021).  "To obtain a judgment on this affirmative defense, a defendant must prove 'both an unreasonable delay by the plaintiff and prejudice to itself.'"  *Danjaq Ltd. Liab. Co. v. Sony Corp.*, 263 F.3d 942, 950–51 (9th Cir. 2001) (quoting *S. Pac. Co. v. Bogert*, 250 U.S. 483, 500 (1919)).  On summary judgment, "'[plaintiff's] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'"  *United States v. Sandwich Isles Comms., Inc.*, 398 F. Supp. 3d 757, 769 (D. Haw. 2019).

### a) Unreasonable Delay

The summary judgment record does not clearly establish that Mr. Fugnetti unreasonably delayed in bringing his action against BBG.  "[A]ny delay is to be measured from the time that the plaintiff knew or should have known about the potential claim at issue."  *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000).  That is, "the period of delay is measured from when the claimant had actual notice of the claim or would have reasonably been expected to inquire about the subject matter."  *Id.*  It is disputed whether Mr. Fugnetti had personal knowledge of BBG's use of the Pigeon Image on its marketing materials and product packaging as of 2004, which neither he nor MIAD had any role in creating.  (BBG's RSUF ¶¶ 62–63.)  Though BBG contends that Mr. Fugnetti himself visited BBG's offices at least three times and viewed these marketing materials, (*id.* ¶ 32), the Photography Trust contends that Mr. Fugnetti had no knowledge of the specific product packaging at issue nor that BBG had trademarked the image, since both occurred after MIAD and Mr. Fugnetti ended their relationship, (*id.* ¶¶ 62–63, 72).

### b) Prejudice

BBG has also failed to show that any delay on Mr. Fugnetti's part severely prejudiced BBG.  "Courts have recognized two chief forms of prejudice in the laches context – evidentiary and expectations based."  *Danjaq*, 263 F.3d at 955.  "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died."  *Id.*  "A defendant may also demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly."  *Id.*  Here, BBG presents no evidence of the amount of time or money BBG invested in its use of the flying pigeon image.  And while Mr. Fugnetti has unfortunately passed away, preventing him from testifying as to any facts concerning MIAD's license of the pigeon image to BBG, this potential prejudice is

mitigated by Mr. Bischetsrieder' s role in this case.  Indeed, Mr. Bischetsrieder was Mr. Fugnetti's partner at MIAD and cooperated in discovery in this case.  (BBG's RSUF ¶ 3; Bischetsrieder Decl. ¶¶ 5–6.)  Though he may not be a complete substitute for Mr. Fugnetti, he is a source of information that can speak, and did speak, to MIAD's role in the creation and distribution of the flying pigeon image at the time in question.

Moreover, *Petrella* stands for the proposition that finding a laches defense in a copyright case is an "extraordinary" remedy.  Since there are factual disputes as to what Mr. Fugnetti knew about BBG's use of the image and when he learned it, the Court finds that there is simply not enough evidence to conclude that he unreasonably delayed in bringing the present action.  The Court will not grant such an extraordinary measure at this stage of the litigation.  BBG's motion on its affirmative defense is **DENIED**.

## B.    The Photography Trust's Cross Motion for Summary Judgment

The Photography Trust moves for summary judgment as to BBG's counterclaim for breach of a nonexclusive license, on its assertion that there is a causal nexus between BBG's revenues and its use of the pigeon image, on BBG's unclean hands defense, and on BBG's statute of limitations defense.  The Court analyzes each in turn.

### 1.    Breach of Nonexclusive License

In its motion, the Photography Trust's sole argument that it should be granted summary judgment on BBG's breach of nonexclusive license claim is that BBG's alleged damages consist of nothing more than attorney's fees and costs incurred in defending against the Photography Trusts' claims, which cannot be recovered under California law absent a specific contractual provision or statute allowing BBG to seek such damages. (Photography Trust's MSJ at 21.)  Defendant responds that such damages can be

recovered as "consequential" damages since it was foreseeable that BBG would defend itself against Plaintiff's claims if Plaintiff sued BBG.  (Dkt. 100 [BBG's Opposition to Plaintiff's MSJ] at 15.)  "Enforcing a copyright license 'raises issues that lie at the intersection of copyright and contract law.'"  *MDY Industries, LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) (quoting *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 11 (9th Cir. 1999) *overruled on other grounds*, *Perfect 10, Inc. v. Google Inc.*, 653 F.3d 976 (9th Cir. 2011)).  The Ninth Circuit has explained that breaches of terms that limit the scope of a copyright license are actions for copyright infringement, whereas actions asserting breaches of all other license terms are contract actions governed by the appropriate state's laws.  *MDY Industries*, 629 F.3d at 939.  As Judge Guilford explained in resolving Mr. Fugnetti's Anti-SLAPP motion against BBG, "a nonexclusive license that's unlimited in scope necessarily implies a promise not to sue for copyright infringement."  *Fugnetti v. Bird B Gone, Inc.*, 2019 WL 6362467, at \*3 (C.D. Cal. Sept. 16, 2019) (citing *In Re CFLC, Inc.*, 89 F.3d 673, 677 (9th Cir. 1996)).  As such, BBG is legally able to recover all appropriate damages for breach of an nonexclusive license available under California law, including consequential damages.  *See Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 824 (9th Cir. 2001) (holding state law determines contract questions in connection to the grant of a copyright license).

Additionally, the Court does not need to decide whether attorneys' fees and costs may be recovered for a breach of a nonexclusive license claim because Defendant presents evidence that these are not its only claimed damages.  (BBG's RSUF ¶ 81.)  Indeed, BBG asserts that it has also incurred damages because it phased out its use of the Flying Pigeon Image due to Plaintiff's alleged breach.  (Dkt. 104-4 [Deposition of Bruce Alan Donoho, hereinafter "Donoho Dep."] 176:7-18.)  Though the Photography Trust argues that the Court should not consider this evidence because it was never asserted in discovery, that is not accurate.  (Dkt. 104 [The Photography Trust's Reply in Support of its Motion for Summary Judgment, hereinafter "Photography Trust's Reply"] at 12.)

Counsel for the Photography Trust deposed BBG's President Bruce Donoho on the very topic in July of 2021. (Donoho Dep. at 176:7-18.) In his deposition, Mr. Donoho explained that BBG incurred expenses in employee time, factory time, and manufacturing time spent on changing it product packaging as a result of Plaintiff's suit. (*Id.*) In Reply, Plaintiff essentially concedes that BBG would be able to recover such damages, only arguing that the evidence is improper. (Photography Trust's Reply at 12.) However, the Court finds that these expenses would fall within the exact type of consequential damages California law permits, assuming BBG is able to show that the damages were foreseeable, proximately caused by Plaintiff's breach, and reasonable. *See Global Hawk Insurance Co. (RRG) v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 854-55 (C.D. Cal. 2019) (quoting *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969 (2004)) (Consequential damages "must be 'foreseeable and proximately caused by the breach of a contract'—they are recoverable only to the extent they 'were either actually foreseen . . . or were 'reasonably foreseeable' when the contract was formed.'"). Accordingly, the Photography Trust's motion for summary judgement on BBG's counterclaim for breach of nonexclusive license is **DENIED**.

### 2.     Causal Nexus Between BBG's Revenues and the Flying Pigeon Image

Plaintiff has also failed to meet its burden that there is a causal nexus between BBG's revenues and its use of the flying pigeon image on its product packaging. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1526 (9th Cir. 1992)). "Put another way, '[plaintiff's] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *United States v. Sandwich Isles Comms., Inc.*, 398 F. Supp. 3d 757, 769 (D. Haw. 2019). Here,

Plaintiff must satisfy the "two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement."  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).

But the Photography Trust fails to submit sufficient evidence showing that no reasonable trier of fact could find that there is no causal nexus between BBG's profits and its use of the flying pigeon image on its packaging.  In fact, Plaintiff presents no evidence of BBG's profits, let alone evidence that any portion of those profits was attributable to its use of the image.  (*See* Photography Trust's MSJ at 24–25.)  Though the Photography Trust points to testimony that BBG intended to use the image to help consumers show how its bird-deterrent product works, this is not enough to show that the use of the image "may have actually influenced the purchasing decisions" of those that bought BBG's products.  *Polar Bear*, 384 F.3d at 714.  There is indeed no evidence on the record at all that the use of the image caused anyone to purchase a BBG product or increased BBG's sales at all.  Put plainly, the Photography Trust has failed to carry its burden at this stage of the litigation and its motion for summary judgment on this issue is **DENIED**.

### 3.    Unclean Hands

The Photography Trust is entitled to summary judgment on BBG's unclean hands defense, because BBG has failed to raise a genuine dispute of material fact as to this issue.  Under the doctrine of unclean hands, a plaintiff's copyright claim may be dismissed "if defendant establishes that plaintiff's evidence was false and that plaintiff was involved in a scheme to defraud the public."  *Supermarket of Homes, Inc. v. San Fernando Valley Board of Realtors,* 786 F.2d 1400, 1408 (9th Cir. 1986).  BBG's

unclean hands theory is premised on the notion that Mr. Fugnetti knowingly and intentionally supplied false information on his copyright application, stating that the flying pigeon image was not a work made for hire and that he falsely identified himself as the author rather than MIAD.  (BBG's Opp. at 16–17.)  However, the summary record is devoid of any facts that would even suggest that Mr. Fugnetti's conduct in this regard was knowing or intentional.  BBG also misrepresents the facts upon which the claim is based.  Mr. Fugnetti did identify MIAD on the copyright application as the author, next to himself.  (Dkt. 97-3 [Declaration of John van Loben Sels in support of BBG's MSJ, hereinafter "Sels Decl."], Dkt. 97-7 [Exhibit D to Sels Decl., Copyright Registration Certificate of flying pigeon image].)  Absent any evidence of Mr. Fugnetti's intent in filling out and filing the copyright application, BBG has failed to raise a factual issue on this claim.  The Photography Trust's motion for summary judgment on BBG's unclean hands defense is therefore **GRANTED**.

### 4.      Statute of Limitations

The Photography Trust also moves for summary judgment on BBG's statute of limitations defense.  BBG, as the defendant in the Photography's Trust copyright infringement claim, bears the burden of proving this defense.  *Kingman Reef Atoll Investments, L.L.C. v. U.S.*, 541 F.3d 1189.  Under the Ninth Circuit's "discovery rule," a copyright infringement claim accrues—and the three-year statute of limitations begins to run—when a party discovers, or reasonably should have discovered, the alleged infringement.  *Polar Bear*, 384 F.3d at 706.  The Copyright Act has a rolling limitations period, however, which restarts upon each "separate accrual" of a claim.  *See Petrella*, 572 U.S. at 674; 17 U.S.C. § 507(b).  BBG has presented evidence that it began phasing out its use of the flying pigeon image in 2013, about six years before Mr. Fugnetti filed this action. (BBG's RSUF ¶¶ 75–79.)  The Photography Trust counters with evidence that the flying pigeon was still used in BBG's marketing materials as recently as 2019.  (*Id.*)

The conflicting evidence here is enough to raise a genuine issue of material fact. Accordingly, the Photography Trust's motion for summary judgment on this issue is **DENIED.**

## V.  CONCLUSION

For the foregoing reasons, BBG's motion for summary judgment is **DENIED**.  The Photography Trust's motion for summary judgment is **DENIED IN PART AND GRANTED IN PART**.  Specifically, the Photography Trust's motion for summary judgment as to BBG's unclean hands defense is **GRANTED**, the rest of the Photography Trust's motion is **DENIED**.

DATED:     April 4, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE