Mathew K. Higbee, Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6729 facsimile
mhigbee@higbeeassociates.com
rcarreon@higbeeassociates.com

Attorney for
DENNIS FUGNETTI PHOTOGRAPHY TRUST

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS FUGNETTI PHOTOGRAPHY TRUST,<br><br>Plaintiff,<br><br>v.<br><br>BIRD B GONE, LLC; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 8:19-cv-00847-SK<br><br>**MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PETER SCHWECHHEIMER PURSUANT TO FRE 702, 703 AND *DAUBERT*** <br><br>**FPTC Date:** Aug. 29, 2022<br><br>**Trial Date:** Sept. 27, 2022 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 29, 2022 at 11:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Steve Kim of the above-titled court, located at 255 E. Temple Street, Courtroom 540, 5th Floor Los Angeles, California 90012, Plaintiff Dennis Fugnetti Photography Trust will and hereby does move pursuant to Federal Rules of Evidence 703, 703, and the principles articulated in *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993) and its progeny to exclude the expert report and testimony of Peter Schwechheimer.

1 |     This Motion is based on this Notice, the attached Joint Stipulation, the declaration of Ryan E. Carreon in support, and the pleadings, files and other materials that are on file with the Court or may be presented at the hearing.

DATED: August 17, 2022          Respectfully submitted,

/s/ *Ryan E. Carreon*
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. Factual Background.

This is a copyright infringement action. The Dennis Fugnetti Photography Trust ("Fugnetti") is the sole copyright holder to a photograph of a pigeon landing with its wings expanded ("Flying Pigeon Image"). Defendant Bird B Gone, LLC ("BBG") manufactures and sells various bird and pest deterrent products including a set of stainless-steel bird spikes which can be placed on roofs, signage, and other surfaces as a deterrent to prevent birds from landing.

Fugnetti contends that BBG trademarked the Flying Pigeon Image and used it on its retail product packaging without authorization. In 2017, BBG contacted Fugnetti to request information about the creation of the Flying Pigeon Image so that BBG could submit a copyright application. At that point, Fugnetti did not know that BBG had been using the Flying Pigeon Image on its packaging or as a trademark.

Fugnetti responded that he would be willing to license the Flying Pigeon Image to BBG for a fee. Fugnetti subsequently prepared a license for "Limited use of Flying Pigeon copyright for print and web" for $5,200. After conducting a further inquiry, Fugnetti discovered that BBG had trademarked the Flying Pigeon Image without his knowledge and had been using the Flying Pigeon Image on its retail packaging.

Fugnetti subsequently filed suit for copyright infringement. Under the Copyright Act, Fugnetti can recover his actual damages plus disgorgement of profits attributable to the infringement. As part of his case, Fugnetti contends that his actual damages would be in the form of his "lost license fee" and that he can also disgorge the profits for each product that BBG sold which utilized packaging containing the Flying Pigeon Image.

During the course of discovery, Fugnetti uncovered various different products for which BBG had used the Flying Pigeon Image on its packaging. The total gross sales of these products total approximately $3 million.

### B. BBG's Expert Provides An Incomplete And Unsigned Report.

At the close of expert discovery, BBG disclosed that it had retained economist Peter Schwechheimer as a damages expert to opine on Fugnetti's actual damages. On July 12, 2021, BBG disclosed a document titled "Expert Damages Report of Peter Schwechheimer" ("Original Report") which was not signed by Schwechheimer and did not contain the items required by Federal Rules of Civil Procedure 26(a)(2)(B). In his deposition, Schwechheimer stated that he was originally retained to provide a rebuttal opinion, but that he was informed one week before the July 12 deadline that he would be providing an affirmative expert opinion so he went into "scramble mode" to try and complete his report. Declaration of Ryan E. Carreon ("Carreon Decl."), Exhibit A, pp. 36:18-25, 37:1-25, 38:1-5.

Due to Schwechheimer's admitted "rush job" the Original Report contained numerous errors and omissions despite its modest length of eight pages. For example, the section labeled "Summary of Opinions" consisted solely of the following placeholder text. Carreon Decl., Exhibit B, p. 2.

In addition, Schwechheimer stated that according to his own search of the U.S. Copyright Office's Copyright Public Records Portal "between 1984 and 1991, Mr. Fugnetti filed copyright registrations on 23 images of various high end luxury automobiles including Corvette, Lamborghini, Ferrari, and Porsche along with a single registration on October 23, 2018 titled 'Blackies Pigeon #1' (which I understand is the stock photograph image at issue in this case.)." Carreon Decl., Exhibit B, p. 3; *see also* https://bit.ly/3pnm0XF.

However, a closer examination of the registrations shows that the "23 images of various high end luxury automobiles" referenced by Schwechheimer were actually registered to a New York based company called Scafa-Tornabene Art Publishing

Company, Inc. which has no affiliation with any parties to this case, past or present. *See* https://bit.ly/3pnm0XF.

Finally, despite Schwechheimer's "analysis" of various types of stock photography pricing contained in his Original Report, Schwechheimer failed to offer a definitive opinion regarding what he believed to be an appropriate amount of actual damages in this case. Rather, at the end of the report, Schwechheimer hedged by stating that he would:

> direct [the trier of fact] to the current set of single image prices for stock photographs as well as the availability of nearly 200,000 images of flying pigeons as a benchmark for BBG's copyright damages and as [sic] reasonableness test for the $5,200 license figure negotiated but not consummated between the plaintiff and defendant.

Carreon Decl., Exhibit B, p. 8.

### C. BBG's Provides An 11th Hour Document Dump.

On Friday July 30, 2021 the Parties held an informal discovery conference with Hon. Magistrate Judge Douglas F. McCormick. Dkt #94; Carreon Decl., ¶8. At the informal conference, Judge McCormick set a deadline for Fugnetti to provide a supplemental damages calculation for August 14, 2021 in light of additional information and documents that had come to light to the deposition of BBG's witnesses. Dkt #94; Carreon Decl., ¶9. On the evening of July 30, 2021, BBG provided a supplemental production of nearly 3,500 documents, almost double the amount of documents that it had previously produced in the litigation. Carreon Decl., ¶10.

After having reviewed the newly disclosed documents and additional documents that were obtained via subpoena, Fugnetti prepared and served a supplemental damages disclosure on BBG, which included a detailed spreadsheet of products it had identified that used the Flying Pigeon Image on its packaging, the year the use occurred, citations to supporting evidence, and the gross revenues associated with the sales of those products. Carreon Decl., ¶11.

### D. BBG's Expert Provides Wholly New Damages Theories.

On August 18, 2021, BBG disclosed a document titled "Supplemental Expert Damages Report of Peter Schwechheimer" ("Supplemental Report"). Carreon Decl., Exhibit C. In his deposition, Schwechheimer characterized the Supplemental Report as "a polish of the original report rather than something that is completely new or different." Carreon Decl., Exhibit A, p. 82:13-18. However, despite this characterization, the Supplemental Report contained numerous additional opinions that were not contained in the Original Report.

Specifically, it contained significant analysis related to whether it would be appropriate for Fugnetti to disgorge BBG's profits and concluded with the opinion that "the ongoing commercial success of BBG's bird spike products in packaging that now does not include the at-issue copyrighted photograph indicates the incremental value of the Flying Pigeon Image is effectively zero." Carreon Decl., Exhibit C, p. 11.

The Supplemental Report also contained many of the same errors in the Original Report. For example, Schwechheimer again referenced the "23 images of various high end luxury automobiles" that he mistakenly believed were registered by Fugnetti but were actually registered to a New York based company called Scafa-Tornabene Art Publishing Company, Inc. which has no affiliation with any parties to this case, past or present. *See* https://bit.ly/3pnm0XF.

In his deposition, Schwechheimer testified that the existence of these registrations informed his expert opinion because his mistaken assumption that Fugnetti had registered these images led him to believe Fugnetti was sophisticated with copyright protection and monetization and that his failure to register the Flying Pigeon Image shortly after it was created was an indication of Fugnetti's lack of intent to monetize the image. Carreon Decl., Exhibit A, pp. 39:6-22; 40:2-11; 41:8-17; 44:17-25; 45:1-25; 46:1-12.

///

### E. BBG's Expert Admits He Is Unqualified.

Subsequently, on August 19, 2021, Fugnetti deposed Schwechheimer. During his deposition, Schwechheimer stated that he "wasn't necessarily an industry subject expert on the professional photography industry" and so he had to do "a bunch of third-party research and read some papers on just what the industry pricing structure was for stock photographs." Carreon Decl. Exhibit A, pp. 58:5-10. He also admitted that he was not a photography expert, or an expert on marketing or advertising. Carreon Decl. Exhibit A, pp. 75:20-25; 76:1-11.

When pressed to explain the basis for his opinions during the deposition, Schwechheimer was incredibly evasive. Schwechheimer testified that he did not believe Fugnetti had established a causal connection between BBG's use of the Flying Pigeon Image and the profits sought to be disgorged by Fugnetti because he "noticed that when [the Flying Pigeon Image is] not on [product packaging], it's not that sales go to zero. It's that people still want the bird spikes, what's in the box, and not what's –they're buying what's in the box and not what's on the box." Carreon Decl. Exhibit A, pp. 95:16-25; 96:1-4. When repeatedly asked to clarify what specific products or specific sales years he was referring to, Schwechheimer repeatedly demurred by stating that it was "Plaintiff's analysis" and "Plaintiff's burden." *See* Carreon Decl. Exhibit A, pp. 90-105.

## II. BBG'S EXPERT SHOULD BE EXCLUDED AS UNQUALIFIED AND OFFERING OPINIONS BASED ON UNSOUND METHODOLOGY

Federal Rules of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" all of the following elements are met:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

1  (d) the expert has reliably applied the principles and methods to the facts of the case.

2  Fed. R. Evid. 702.

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, (1993), "the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-49 (1999)). "*Daubert* … requires a court to admit or exclude evidence based on its scientific reliability and relevance." *Id.* (citing *Kumho Tire Co.*, 526 U.S. at 152).

Pursuant to *Daubert*, a district court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93; *see also Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1227-28 (9th Cir. 1998) (applying *Daubert* to expert testimony).

### A. Schwechheimer Does Not Meet The Threshold Qualifications To Submit Expert Testimony In This Case.

As a threshold matter, Schwechheimer admittedly does not possess any "scientific, technical, or other specialized knowledge" concerning the underlying subject matter.

The Copyright Act provides a copyright holder may recover "actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504 (b). Actual damages is typically determined via a "hypothetical lost license fee." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004).

During his deposition, Schwechheimer stated that he "wasn't necessarily an industry subject expert on the professional photography industry" and so he had to do "a bunch of third-party research and read some papers on just what the industry pricing structure was for stock photographs." Carreon Decl. Exhibit A, pp. 58:5-10.

1  Thus, by his own admission Schwechheimer does not possess any "scientific,
2  technical, or other specialized knowledge" to be able to opine about Fugnetti's "lost
3  license fee" because prior to preparing his report Schwechheimer was not familiar
4  with the pricing structure of the stock photography industry.

### B. Schwechheimer's Testimony Is Not Based On Sufficient Data.

Schwechheimer's opinions are also based on insufficient facts or data.

In both the Original and Supplemental Report, Schwechheimer referenced the "23 images of various high end luxury automobiles" that he mistakenly believed were registered by Fugnetti but were actually registered to a New York based company called Scafa-Tornabene Art Publishing Company, Inc. which has no affiliation with any parties to this case, past or present. *See* https://bit.ly/3pnm0XF.

In his deposition, Schwechheimer testified that the existence of these registrations informed his expert opinion because his mistaken assumption that Fugnetti had registered these images led him to believe Fugnetti was sophisticated with copyright protection and monetization and that his failure to register the Flying Pigeon Image shortly after it was created was an indication of Fugnetti's lack of intent to monetize the image. Carreon Decl., Exhibit A, pp. 39:6-22; 40:2-11; 41:8-17; 44:17-25; 45:1-25; 46:1-12.

Similarly, during his deposition Schwechheimer discussed the detailed spreadsheet provided by Fugnetti which contained the list of BBG products Fugnetti had identified that used the Flying Pigeon Image on its packaging, the year the use occurred, citations to supporting evidence, and the gross revenues associated with the sales of those products. During his deposition, Schwechheimer stated that he had assumed that if a year was not included on the list provided by Fugnetti then it must have meant the Flying Pigeon Image was not used on that product packaging for that particular year and that since the sales did not decrease that meant there was no correlation between use of the Flying Pigeon Image and gross product sales. Carreon Decl., Exhibit A, pp. 94:21-25; 95:1-25; 96:1-25; 97:1-25; 98:1-25:99:1-25; 100:1-3.

However, counsel pointed out to Schwechheimer that absence of a product year on Fugnetti's list could have been the result of being unable to identify whether the Flying Pigeon Image was used on that particular product for that particular year one way or another rather that a definitive finding that the Flying Pigeon Image was absent from the product on that given year. Carreon Decl., Exhibit A, pp. 98:11-18.

Finally, when asked during his deposition to specifically identify what data he had relied on when discussing his opinion that "the incremental value of the Flying Pigeon Image is effectively zero," Schwechheimer repeatedly demurred by stating that it was "Plaintiff's analysis" and "Plaintiff's burden." *See* Carreon Decl. Exhibit A, pp. 90-105.

Thus, much of the data that Schwechheimer used to render his opinion were based on faulty or erroneous assumptions of fact. And in some instances, Schwechheimer struggled to specifically identify what data he had relied on to render his opinion.

### C. Schwechheimer's Did Not Reliably Apply Principles And Methods.

Finally, Schwechheimer's did not reliably apply his various principles and methods to the facts at issue.

The Copyright Act provides that:

> The copyright owner is entitled to recover … any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue.

17 U.S.C. §504(b).

Courts have recognized two types of disgorgement of profits analysis depending on the nature of the underlying infringement. The first type is "direct" profits which is where profits is generated from the sale of the infringing item or product itself. The second type is disgorgement is of "indirect" profits which is where the infringed work is used to sell a non-infringing product or service. *Garcia v.*

1  *Coleman*, 2009 U.S. Dist. LEXIS 29458 (N.D. Cal. Mar. 24, 2009) (determine that disgorgement of sales of wine was proper where the infringed photograph "was inextricably linked to the brand of wine being sold by Defendants -- i.e., it graphically embodied the brand on the label.").

Like *Garcia,* this not a case of "direct" profits. Rather, Fugnetti's primary contention is that BBG used the Flying Pigeon Image on its product packaging as a brand symbol and demonstrative in order to sell its bird deterrent products.

Section 504(b) of the Copyright Act creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement. *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).

Schwechheimer testified that he did not believe Fugnetti had established a causal connection between BBG's use of the Flying Pigeon Image and the profits sought to be disgorged by Fugnetti because he "noticed that when [the Flying Pigeon Image is] not on [product packaging], it's not that sales go to zero. It's that people still want the bird spikes, what's in the box, and not what's – they're buying what's in the box and not what's on the box." Carreon Decl. Exhibit A, pp. 95:16-25; 96:1-4.

Schwechheimer's statement that his opinion is based on the observation that BBG customers are "buying what's in the box and not what's on the box" demonstrates that Schwechheimer was incorrectly analyzing the infringement at issue under a "direct" profits analysis rather than the correct "indirect" profits analysis. Additionally, Schwechheimer admitted that he was not a photography expert, or an expert on marketing or advertising, and thus it is unclear if Schwechheimer, as an economist, is even qualified to render an expert opinion on whether a sufficient causal nexus exists in the first place. Carreon Decl. Exhibit A, pp. 75:20-25; 76:1-11.

As to the second prong, apportionment of profits, the statute clearly states that the infringer bears the burden of proof. When repeatedly asked about apportionment,

Schwechheimer repeatedly demurred by stating that it was "Plaintiff's analysis" and "Plaintiff's burden," which was not correct. *See* Carreon Decl. Exhibit A, pp. 102:23-25; 103:1-21; 104:11-25; 105:1-21.

In conclusion, Schwechheimer's expert report and testimony are irreparably flawed and must be excluded. Schwechheimer does not meet the threshold qualifications to render the expert opinions given in this case. Even if he is qualified, much of the data that he relies on is either irrelevant, incomplete, or based on faulty assumptions of fact. Finally, Schwechheimer's methods of applying the data to the facts are not reliable and do not comport with the applicable burdens of proof under the Copyright Acts,

Thus, Schwechheimer should be excluded from presenting his report or testifying at trial.

### III.  CONCLUSION

The Dennis Fugnetti Photography Trust respectfully requests that the Court Grant its Motion and exclude the expert report and testimony of Peter Schwechheimer at trial.

Dated: August 17, 2022                    Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*

## PROOF OF SERVICE

I, the undersigned, say:

I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action My business address is 1504 Brookhollow Dr., Ste 112, Santa Ana, California, 92705.

On August 17, 2022 I caused to be served the foregoing documents:

**MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PETER SCHWECHHEIMER PURSUANT TO FRE 702, 703 AND *DAUBERT*; DECLARATION OF RYAN E. CARREON**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California using the CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

John D Van Loben Sels    jvanlobensels@thoits.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on August 17, 2022, at Santa Ana, California.

*/s/ Ryan E. Carreon*
Ryan E. Carreon