Mathew K. Higbee, Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6729 facsimile
mhigbee@higbee.law
rcarreon@higbee.law

Attorney for
DENNIS FUGNETTI PHOTOGRAPHY TRUST

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS FUGNETTI PHOTOGRAPHY TRUST,<br><br>Plaintiff,<br>v.<br>BIRD B GONE, LLC; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 8:19-cv-00847-SK<br><br>**OPPOSITION TO BIRD B GONE, LLC'S EX PARTE APPLICATION TO STAY ENFORCEMENT** |

i
**OPPOSITION TO EX PARTE APPLICATION**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BBG's EX PARTE APPLICATION SHOULD BE DENIED

### A. BBG made no attempt to comply with the Local Rules regarding notice of its Ex Parte Application.

Prior to filings its Ex Parte Aplication, BBG made no effort whatsoever to comply with the Local Rules prior to filing its Ex Parte Application. Local Rule 7-19.1 requires that "

> It shall be the duty of the attorney so applying (a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application.

Here, BBG made no effort whatsoever to comply with its duty to make a good faith effort to notify counsel for Plaintiff of this Ex Parte Application. Declaration of Ryan E. Carreon ("Carreon Decl.") ¶¶3-5. BBG does not even try to hide the fact that it did not bother to comply with the Local Rules. In its declaration, BBG simply states that on January 31 it sent an email to counsel to inquire as to whether he would agree to an informal stay of execution of the judgment. Dkt. #253-1 and #253-2. In response, counsel for Plaintiff stated that BBG could avail itself of the proper procedures if it wanted to stay execution. *Ibid.*

The email correspondence submitted makes no mention of BBG's intent to seek *any* relief much less Ex Parte relief. Indeed, six days elapsed between the January 31 email submitted by BBG and the filing of its Ex Parte Application, yet BBG apparently did nothing during that time period. Carreon Decl. ¶¶3-5. At no point did BBG ever attempt to meet and confer with counsel for Plaintiff or attempt to notify counsel for Plaintiff that BBG intended to seek relief.

BBG's failure in this regard is sufficient grounds for the Court to deny its Application outright. *In re Renee Lynn Grismore Mercedes-Benz USA, LLC*, 2022 U.S. Dist. LEXIS 140821, at *3 (C.D. Cal. July 5, 2022) ("[T]he Court would deny

1 | the Application solely on the basis of Grismore's failure to comply with L.R. 7-
2 | 19.1.").

3 | As such, BBG's Ex Parte Application should be denied.

4 | **B.     Ex Parte relief is the improper vehicle for BBG to obtain a stay.**

5 | In *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) the requirements a party must meet to obtain ex parte relief emerged. 883 F. Supp. at 492. Specifically, the party seeking ex parte relief must establish why a motion cannot be calendared in a regular manner; that they will be irreparably prejudiced if motion is heard in accord with regular procedures; and that the requesting party is without fault in creating the crisis that requires *ex parte* relief or that the crisis was due to excusable neglect. *Ibid*. Notably, a party is not required to argue that good cause exists to receive ex parte relief.

Turning to the case at hand, BBG has provided little to no justification as to why this Court should grant extraordinary and immediate ex parte relief.

First, BBG cannot show that it is without fault in creating the crisis at hand. Judgment in the matter was entered on December 16, 2022. Under Federal Rules of Civil Procedure 62(a) "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry." Thus, BBG had, at minimum, a 30 day grace period with which to request an indefinite stay of execution of the judgement. Had BBG utilized that 30 period prudently, it could have filed a motion to stay according to the regular motion procedures, which would have in turn given Plaintiff ample opportunity to file a thorough opposition brief.

However, BBG chose to simply do nothing. It was not until after Plaintiff filed for a writ of execution that BBG even reached out to Plaintiff about a stay, and even then, BBG only requested that the Plaintiff voluntarily suspend collection efforts. Dkt. #253-2. Thus, ex parte relief should be denied because the "emergency" that necessitated BBG's application was the result of BBG's failure to request a stay during the automatic stay of execution.

Similarly, BBG cannot establish that it will be irreparably prejudiced if it were required to seek relief by regularly noticed motion. BBG contends that it is critical to preserve the status quo prior to the parties February 23, 2023, settlement conference because it believes that judgment collection will undermine its ability to negotiate. However, BBG's concerns about its own negotiating leverage is not the type of "emergency" situation contemplated by the rules governing ex parte relief. Additionally, BBG does not explain how the current situation is any different that any other case in which parties continue to litigate[1] while preparing to conduct a settlement conference. Regardless, Plaintiff remains committed to conducting the settlement conference in good faith.

Likewise, BBG contends that it is "likely" that the parties Rule 50 motions will substantially adjust the amount of the judgment because Plaintiff seeks to increase the judgment amount while BBG seeks to decrease it. While it is certain that both parties' Rule 50 motions will be well argued, the unassailable fact is that Rule 50 motions are rarely granted. Therefore it is more "likely" that the current judgment amount will not be disturbed at all. Even still, BBG would not be irreparably harmed if Plaintiff's Rule 50 motion were granted and the judgment increase.

Additionally, Plaintiff has not actually engaged in any collections efforts to date. Carreon Decl. ¶6. Thus, BBG would not be "irreparably harmed" if it wants to seek a stay by being required to follow the normal motion procedures. Should BBG desire a stay, it can simply file a regularly noticed motion.

Thus, BBG's Ex Parte Application should be denied.

///

---

[1] BBG suggests that the requesting of a writ of execution is an indication that Plaintiff "does not have plans to entertain good faith settlement proposals. However, the same could be said for BBG's filing of an appeal from the judgment on January 13. Dkt. 243. According to the Federal Rules of Appellate Procedure, the deadline to appeal is automatically extended upon the filing of a motion pursuant to FRCP 50. Fed. Rul. App. Proc. 4(a)(4)(A)(i). BBG has indicated that it intends to file a Rule 50 Motion, but apparently decided that it could not wait to appeal despite the deadline being extended indicating that it likely intends to pursue litigation rather than settlement.

### C. In the alternative, BBG should be required to post a bond.

Federal Rule of Civil Procedure 62(b) states, "At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). An unsecured stay is disfavored. *In re Apollo Grp. Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 118775, at *7 (D. Ariz. Feb. 13, 2008). Security should be provided "in normal circumstances," though a district court in its discretion may grant an unsecured stay in "unusual circumstances." *Id.* at *5. In addition to preserving the status quo, a bond also serves to compensate the prevailing party "for delay in the entry of the final judgment." *See N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).

Despite complaining about needing a stay to maintain the status quo, BBG contends that it should be excused from posting the required security if a stay is granted. Additionally, BBG fails to articulate what "unusual circumstances" exist in this case sufficient to excuse it from posting any security at all.

BBG contends that, BBG's revenues are sufficiently more than the judgment and that it was recently acquired by the Pelsis group which has substantial assets. However, this argument is not sufficient to demonstrate that no security should be posted.

The original Defendant in this matter was Bird B Gone, Inc. Carreon Decl. ¶7. The revenues presented at trial were earned by the corporation during its existence as a family-owned company. Carreon Decl. ¶8. However, after the corporation was acquired by Pelsis in 2021, it converted out into a pass-through LLC which is the judgment debtor. Carreon Decl. ¶¶9-10, Exhibit A. Pelsis itself is based in the United Kingdom, not the United States. *See* https://www.pelsis.com/about-us/.

1    The legal conversion of BBG from a domestically owned and operated corporation to a foreign owned pass-through LLC demonstrates why posting of security is prudent here.

First, while Pelsis may be solvent, it is not the judgment debtor in this case. Because Pelsis acquired BBG after the events that gave rise to the litigation, it is also not likely that Pelsis could be added as a judgment debtor to satisfy the judgment. Even if it could, Pelsis is not based in the United States, and therefore not necessarily subject to collections efforts in California or the United States. Any efforts by Plaintiff to collect directly against Pelsis would likely involve trying to domesticate the judgment in a foreign jurisdiction.

Second, the fact that BBG is now a pass-through entity indicates that it likely does not hold the substantial assets it once did, since the purpose of a pass through entity is to pass income straight to its owner, in this case Pelsis, rather than hold it. *See* https://www.investopedia.com/terms/f/flow-through.asp . Although Pelsis may be solvent, there is nothing to suggest that BBG is solvent or that Pelsis has not simply moved majority of the prior existing BBG Inc's assets elsewhere, or that it could not simply diminish the assets of BBG to a nomial amount to avoid Plaintiff's collections efforts.

As such, should the Court determine that a stay is warranted, it should require BBG to post security as it deems necessary.

Finally, to the extent that the parties' Rule 50 motions affect the amount of the judgment, the prevailing party can petition the Court to reconsider the bond amount at the appropriate time.

## II.   CONCLUSION

The Dennis Fugnetti Photography Trust respectfully requests that the Court Grant deny Bird B Gone, LLC's Ex Parte Application or, in the alternative, required Bird B Gone, LLC to post security.

Dated: February 6, 2023,      Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*

## PROOF OF SERVICE

I, the undersigned, say:

I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action My business address is 1504 Brookhollow Dr., Ste 112, Santa Ana, California, 92705.

On February 6, 2023, I caused to be served the foregoing documents:

**OPPOSITION TO EX PARTE APPLICATION; DECLARATION OF RYAN E. CARREON**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California using the CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

John D Van Loben Sels    jvanlobensels@thoits.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on February 6, 2023, at Wilmington, Delaware.

*/s/ Ryan E. Carreon*
Ryan E. Carreon